Overbrook Farms Club, John T. Curtin, Augustus Sigismondi and Denis V. Brenan, Appellants *v.* Zoning Board of Adjustment of Philadelphia, Appellee.

Argued April 5, 1979, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*Henry B. Fitzpatrick, Jr.*, with him *Liebert, Short, Fitzpatrick & Lavin*, for appellants.

*Milton S. Lazaroff*, with him *Techner, Rubin, Shapiro, Slass & Lazaroff*, for appellees.

OPINION BY JUDGE CRAIG, August 15, 1979:

This zoning appeal turns on one narrow question: When, under the Philadelphia Zoning Ordinance, an application for a zoning board of adjustment certificate comes to the Philadelphia Board of Adjustment by referral, not appeal, from the zoning administrator, is the board confined to deciding whether the proposal complies with the general criteria for granting all kinds of zoning board of adjustment certificates, or may the board also consider (1) whether the proposal actually comes within the type of use named in the specific certificate provision, and (2) whether the proposal complies with other provisions of the ordinance, such as yard and offstreet parking requirements?

Our conclusion is that no action of the zoning administrator can usurp any part of the board's plenary responsibility to decide whether or not an application for a zoning board of adjustment certificate complies with the ordinance in every respect. We will therefore reverse the decision below and remand it for further consideration.

Initially, we note that a zoning board of adjustment certificate under the Philadelphia Zoning Ordinance is "identical to a special exception as such is provided for in many other zoning ordinances." *Zoning Board of Adjustment of Philadelphia v. Liberty Bell Medical Center*, 17 Pa. Commonwealth Ct. 213, 331 A.2d 242 (1975).

The factual background of this case arises from the application of appellee Drexel Overbrook Associates (applicant) for permits to erect an "old age home" on land in Philadelphia districts zoned R-2 Residential and R-16 Residential, in both of which an "old age home" may be erected if a "zoning board of adjustment certificate" is obtained. Philadelphia Zoning Ordinance Section 14-203(2)(h), Section 14-217(1)(a).[1]

Also pertinent is Philadelphia Zoning Ordinance Section 14-1803 which sets forth the "Criteria for Granting a Zoning Board of Adjustment Certificate" applicable to all certificate uses generally, listing criteria concerning congestion, fire danger, land overcrowding, concentration of population and other general matters, as quoted in full in *Liberty Bell Medical Center, supra,* including the requirement that "the grant of the Certificate will be in harmony with the spirit and purpose" of the ordinance.

The application included plans for a building to contain 261 apartment units and 64 parking spaces.[2]

---

[1] Although the parties have not favored us with a verbatim presentation of these sections in the briefs, both counsel indicate that "old age home" is the specific phrase, and that it is different from an apartment house or multiple dwelling. The verbatim content of the key ordinance sections is always helpful and sometimes crucial.

[2] An earlier application, for a differently-shaped building with 255 units, was rejected by the board. Because of the conclusion we reach here, we do not decide objectors' claim that the earlier rejection legally precluded the board from granting the second application.

The Philadelphia Department of Licenses and Inspections, the zoning administrator, referred the application to the board with remarks that "the erection of a 7½ story old age home . . . requires a certificate from the ZBA," indicating no granting or refusal of the application other than the additional typed words, "Zoning OK," on the referral form.[3]

Appellants are nearby residents who then appeared before the board as objectors. The objectors sought to present evidence that the plans were not for an old age home but for an apartment house or multiple dwelling, which would not be permissible in the location involved, at least without a variance. Objectors also tried to show that the proposal, as set forth in the plans, would violate yard requirements.

The board rejected both offers on the ground that, because the matter was referred by, not appealed from, the zoning administration department, the department had approved the plans as to general building type and otherwise, leaving the board only the function of considering whether or not the general criteria of Section 14-1803 were met. Nevertheless, the board's decision did not merely find compliance with the general criteria but expressly *granted* the certificate.

On appeal to the Common Pleas Court of Philadelphia, the lower court stated two issues:

Is the application one which falls within the zoning provisions dealing with certification?

---

[3] On the application form, the department did not fill in the blocks marked for granting the application or for refusing the application, refusing the "use" or refusing the "zoning"; only the blocks marked "Appeal" and "Ref. to B. of A." were filled in. Thus the face of the application does not substantiate the position that the department made any initial decision. The "O.K." as to "Zoning" on the referral form is not inconsistent with an indication merely that the zoning *district classification* is "O.K."

Will the grant of the certificate prove injurious
to the public interest?

Despite that correct statement of dual issues, the court below held that the board did not err in confining itself to Section 14-1803 and "refusing to hear evidence directed toward indicating non-compliance with the applicable sections of the zoning ordinance."

Exercising our scope of review over errors of law by the court below, we are required to conclude that all matters of ordinance compliance with respect to a zoning board of adjustment certificate are within the responsibility of the board; that responsibility cannot be partly assumed by the administrative department, whether the matter goes to the board by way of referral or appeal.

When the ordinance states that an "old age home" is allowed if a "zoning board of adjustment certificate" is obtained, it plainly imports that the board has the right and duty to consider all aspects of compliance with the requirements for such a certificate. Although the board need not review the plans to determine compliance with codes other than zoning, the board cannot avoid looking at the plans to see if they propose a use type which falls within the zoning provisions for a board certificate. The question of compliance with the requirement that the application be for an "old age home" is a threshold inquiry for the board in considering a certificate question, before it can even reach the issue of compliance with the general criteria such as congestion and overcrowding.[4] By the same token, the board should not grant a cer-

_____

[4] Also, the impact of a use—in terms of how it may affect congestion in the vicinity, for example—plainly is dependent on what type of use is involved, in the context of the particular design shown in the plans; hence the board cannot accept the department's views as to use type and plans as postulates, if the board is to perform its function fully.

tificate if any aspect of the application can be shown to be in violation of zoning ordinance requirements as to yards, offstreet parking or other matters.

This Court, in reviewing whether or not a special exception (certificate) may be granted, has regularly been involved with the threshold question. In *Brunner v. Zoning Hearing Board of Upper Makefield Township*, 12 Pa. Commonwealth Ct. 109, 315 A.2d 359 (1974) we, as well as the board, had to consider whether a heliport was within the special exception category of "airfield." In *Jones v. Zoning Hearing Board*, 7 Pa. Commonwealth Ct. 284, 298 A.2d 664 (1972) we had to consider whether or not a tennis facility was a "club."

We cannot agree with the alternative procedure argued by the applicant's brief (and by some board members on the record) that, if the plans actually do not constitute an old age home design, objectors could later appeal from the ultimate issuance of a permit and bring that basic compliance question back to the board then. Such a second-round appeal would be pointless when the question could as easily be considered at the first board hearing, along with the yard and like issues as well.

We do not here intend to hold that this or any other zoning board must anticipate the possibility of a future departure from approved plans or future activity which violates a zoning permit or certificate. Plans which comply cannot be rejected because of the possibility of future violation. *See Commercial Properties v. Peternel*, 418 Pa. 304, 315, 211 A.2d 514, 520 (1965).

We refer here to the board's duty to examine the plans and application on their face, to see if the proposed building is within the stated use type, not one designed only for a forbidden use. Examination of plans can indicate whether a stable or a palace is pro-

posed, and, perhaps with greater difficulty, whether a multiple dwelling composed of dwelling units or an old age home is involved.

We reverse the decision of the court below and will remand this case with the direction that it be returned to the board for further proceedings in accordance with this opinion.

### ORDER

AND Now, this 15th day of August, 1979, the order of the Court of Common Pleas of Philadelphia County dated August 16, 1977 is reversed, and the record is remanded to the court below, with the direction that it be returned to the Philadelphia Zoning Board of Adjustment for further proceedings in accordance with this opinion.