97 A.3d 323

Gloria MARSHALL

v.

CITY OF PHILADELPHIA and Zoning Board of Adjustment.

Appeal of Archdiocese of Philadelphia.

Supreme Court of Pennsylvania.

Argued March 11, 2014.

Decided July 21, 2014.

Kevin R. Boyle, Esq., Karl Stewart Myers, Esq., Maria J. Wing, Esq., Stradley, Ronon, Stevens & Young, LLP, Philadelphia, for Archdiocese of Philadelphia.

Jon Alan Marshall Jr., Esq., for Gloria Marshall.

Andrew S. Ross, Esq., City of Philadelphia Law Department, for City of Philadelphia.

Darin J. Steinberg, Esq., Elkins Park, for Zoning Board of Adjustment.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice McCAFFERY.

In this zoning matter, we must determine if the Commonwealth Court applied an improper standard in reversing a zoning board's grant of a variance.

On November 8, 2010, the Archdiocese of Philadelphia ("Archdiocese") filed an Application for Zoning/Use Registration Permit with the Philadelphia Department of Licenses and Inspections ("L & I") for conversion of the Nativity B.V.M. Elementary School into a 63–unit, one-bedroom apartment complex for low income senior citizens, to be called Nativity B.V.M. Place. The school, in the Port Richmond section of Philadelphia, had been constructed in 1912 and operated by the Archdiocese in legal non-conformance with subsequently enacted zoning codes until 2008, when it had been closed due to declining enrollment and insufficient revenue. In 2009, the

Archdiocese received funding under the Section 202 Supportive Housing for the Elderly program of the United States Department of Housing and Urban Development ("HUD") to convert the school to senior housing.[1]

L & I denied the Archdiocese's Application for Zoning/Use Registration Permit as not in compliance with several provisions of the Philadelphia Zoning Code.[2] Specifically, L & I found the following: (1) the proposed use was not a permitted use in the R–10A Residential Zoning District;[3] (2) only four parking places were provided in the proposed project, whereas nineteen were required;[4] (3) three of the parking

1. The Archdiocese represents that the federal HUD program and the City of Philadelphia have agreed to furnish approximately $11 million dollars to support the project. *See* Archdiocese's Brief at 7; *see also* http://portal.hud.gov/hudportal/HUD?src=/press/pressreleasesmedia advisories/2010 (press release entitled "Obama Administration Announces More than $550 Million to Help Very Low–Income Elderly and Persons with Disabilities"). The HUD website indicates that Catholic Health Care Services of the Philadelphia Diocese, sponsor of the project, was awarded a capital advance of $9,811,200 to substantially rehabilitate 63 one-bedroom units for very low-income elderly persons. Under the terms of HUD's Section 202 funding, the award will not require repayment as long as the housing remains available for occupancy by very low-income persons for at least 40 years. The Archdiocese stated that the awards were contingent upon its ability to obtain zoning and other approvals for the project. Archdiocese's Brief at 7.

2. At all times relevant to this case, the applicable portion of the Philadelphia Zoning Code was a version of Title 14 that has subsequently been repealed and replaced. *See* Bill No. 110845, approved December 22, 2011, and effective August 22, 2012; *http://www.phila.gov*. Our references to Title 14 all refer to the historical version of this Title.

3. Under § 14–205 of the Philadelphia Zoning Code, the permitted uses in an R–10A district were single family dwellings, residential related uses, and non-residential uses; duplexes and multi-family dwellings were *not* permitted uses. Residential related uses included professional offices in the dwelling of the practitioner; places of worship; municipal art galleries, museums, and libraries; railroad stations; telephone exchange buildings; water or sewer booster substations; and day care facilities. Non-residential uses included art galleries, museums, or libraries; charitable institutions; club houses; fire stations; medical or surgical hospitals; police stations; rest, old age, nursing or convalescent homes, and nurseries; and water or sewage pumping stations.

4. Under § 14–1402(2)(a)(.3) of the Philadelphia Zoning Code, three parking places were required for every ten dwelling units in an apartment building containing 25 or more families in which occupancy was restricted to those 62 years of age or older.

spaces were not of sufficient size;[5] (4) the landscaping in the proposed parking lot was insufficient; and (5) there were several dimensional non-conformities with respect to the rear and side yards and the height of the building. The Archdiocese appealed to the City of Philadelphia Zoning Board of Adjustment ("ZBA") for use and dimensional variances.

On January 5, 2011, the ZBA held an evidentiary hearing at which John Hayes, the project architect, and John Wagner, a representative from Catholic Health Care Services, a part of the Archdiocese and the sponsor of the project,[6] testified. The testimony established that the project constituted "an adaptable reuse of a neighborhood anchor that would have gone vacant, [and] which could have ended up as a nuisance and now [is] going to be adaptive and reused for the benefit of seniors of this community." Notes of Testimony ("N.T."), ZBA Hearing, 1/5/11, at 4. Other evidence indicated that the Archdiocese had engaged the community in discussion about the housing project and had found that there was wide support,[7] and furthermore, that there was a need for low income senior housing in the area. The Archdiocese made clear its intention to open up between 20 and 30 parking spaces on the street by petitioning the city to remove signs banning parking during school hours, signs no longer needed or appropriate since the school had closed. In addition, most of the new residents would have an income at or below the poverty level

5. Under § 14–1402(4)(a)(.1) of the Philadelphia Zoning Code, the minimum dimension of each parking space for a structure intended to be occupied by senior citizens was required to be not less than ten feet by eighteen feet.

6. Catholic Health Care Services offers various senior living options throughout the Philadelphia area. *See* N.T. ZBA Hearing, 1/5/11, at 5–6; *www.catholichealthcareservices.org.*

7. Two letters of support for the project were entered into evidence before the ZBA, to wit, a letter from the local civic association and a letter from the district's elected representative to City Council. Both letters also indicated that the authors' offices had received no calls from neighbors or community groups voicing concern or opposition to the project. *See* Letter from City Councilwoman Joan Krajewski to the ZBA, dated 1/4/11; Letter from Port Richmond on Patrol & Civic Association to the ZBA, dated 1/5/11.

and all would be over age 62, a demographic in which not all individuals own vehicles. *Id.* at 3–9.

At the ZBA hearing, there was only one objector, attorney Jon Marshall, who was representing his mother Gloria Marshall ("Appellee"), a resident of the area who had attended community meetings regarding the project but had not previously raised any objections. *Id.* at 23–24. Appellee argued that the Archdiocese had not shown hardship unique to the school building, as required for the grant of the variance. *Id.* at 14; *see id.* at 23 (Appellee's statement that "Really, it's the hardship issue I'm interested in."). Furthermore, Appellee contended, the Archdiocese had itself created a hardship by choosing to close down all activities in the building rather than raise tuition to generate more revenue. *Id.* at 14–15. When asked by the ZBA co-chairman what her specific opposition was to the proposed project, Appellee responded as follows: "Parking is a problem in that area. The nature of the neighborhood does not have any multifamily housing." *Id.* at 15–16. Appellee also contended that "people were against having Section 8 housing on the block. They found out it would bring people in who were low income, who didn't work, had parties all night, who rolled in the kegs, and had a very enjoyable time on blocks where people had quiet homes." *Id.* at 19. In addition, Appellee objected to placement of a driveway near where children walk; questioned where the trash would be picked up; and observed that pieces of cement had fallen off the building, one piece having landed on the top of a vehicle some twenty years ago. *Id.* at 20–21. Finally, Appellee asserted that, in seeking a variance, the Archdiocese had the burden to show why it was impractical to build single-family houses on the site. *Id.* at 24.

Just prior to the ZBA's vote, co-chairperson Peter Gonzales, Esq., reviewed some of the other uses permitted in this R–10A–zoned district: professional offices, art galleries, a place of worship, a library, a telephone exchange building, a surgical or medical hospital, and a water and sewage pumping station. *Id.* at 30–31. Mr. Gonzales concluded that most of these permitted uses "would provide more congestion to the neigh-

borhood in terms of parking and traffic" than the proposed senior housing project. *Id.* at 31.

The ZBA hearing ended with the members voting unanimously to grant the variances sought by the Archdiocese. The ZBA subsequently set forth its findings of fact and legal conclusions in writing. *See* Findings of Fact and Conclusions of Law of the Philadelphia Zoning Board of Adjustment, filed ·5/6/11. The ZBA concluded that the Archdiocese had established the "overwhelming support" of the surrounding community for the housing project. *Id.* at 8 ¶ 6. In addition, the Archdiocese had demonstrated the "unique nature" of the property, one aspect of which was its legally non-conforming character. *Id.* at 8 ¶¶ 6, 7. The building currently was vacant, in need of repair and providing no benefit to the community. *Id.* at 8 ¶ 6. The variances sought for parking, traffic, trash, and aesthetics "would not adversely impact the health, safety and welfare of the surrounding community," and in fact, the proposed use would be less burdensome on the community than the previous use as a school or other uses permitted as of right. *Id.* at 8 ¶ 7. The conditions that formed the basis for the requested variances were not the result of the Archdiocese's actions, but rather were unique to the property and related to its legally non-conforming character. *Id.* at 8 ¶¶ 7, 8. After weighing all the evidence and considering the record as a whole, the ZBA concluded that the Archdiocese had satisfied its burden of proof, summarizing its decision as follows: "the use of the Subject Property as affordable housing for low income seniors and the dimensional and other use variances required for such use, are consistent with the area surrounding the Subject Property[;] literal enforcement of the Zoning Code would create an unnecessary hardship to the Subject Property[;] there would be no adverse impact on the public health, safety or general welfare[;] and [ ] the Variances represent the minimum variances that will afford relief at the least modification possible." *Id.* at 9 ¶¶ 13–14. Appellee appealed to the court of common pleas, which affirmed, on October 3, 2011, based upon consideration of the record, the

findings and conclusions of the ZBA, and the parties' memoranda and oral argument.

Appellee then appealed to the Commonwealth Court, raising issues related to establishment of hardship and insufficient parking spaces. In an unpublished memorandum opinion filed on October 11, 2012, the Commonwealth Court reversed the order of the court of common pleas affirming the decision of the ZBA to grant the variances sought by the Archdiocese. The court cited several cases that it interpreted to "provide that in order to meet the burden necessary to obtain a use variance, a property owner must demonstrate that the entire building is functionally obsolete for any purpose other than one not permitted under the relevant zoning ordinance." *Marshall v. City of Philadelphia and Zoning Board of Adjustment,* 54 A.3d 444 (Table), No. 244 C.D.2012, Memorandum Opinion at 9, 2012 WL 8668261 (Pa.Cmwlth., filed 10/11/12). Concluding that the Archdiocese had "completely failed to address how the physical characteristics of the property would prevent it from being utilized as one of the many other permitted uses in an R–10A Zoning District," the court held that the ZBA had "improperly found that a unique hardship existed," and its grant of the variances was not based on substantial evidence. *Id.* at 2, 10–11. With regard to the parking issue, the court held that the Archdiocese had failed to establish the infeasibility of constructing the number of parking spaces required by the relevant zoning code. *Id.* at 12–13.[8]

**8.** The Commonwealth Court also determined that the Archdiocese had failed to establish that the requested dimensional variances were necessary, and accordingly held that the ZBA had erred in finding that the proposed variances represented the minimum variances that would afford relief at the least modification possible. *Marshall v. City of Philadelphia and Zoning Board of Adjustment,* 54 A.3d 444 (Table), No. 244 C.D.2012, Memorandum Opinion at 12, 2012 WL 8668261 (Pa. Cmwlth., filed 10/11/12). However, Appellee did not raise any issue before the ZBA related to the dimensional variances sought by the Archdiocese. *See* text, *supra* (summarizing Appellee's comments before the ZBA). Thus, this issue has been waived. As such, it was not properly before the Commonwealth Court and it is not properly before this Court. *See Hertzberg v. Zoning Board of Pittsburgh,* 554 Pa. 249, 721 A.2d 43, 45 n. 5 (1998).

The Archdiocese filed a petition for allowance of appeal in this Court, which we granted, limited to the following issue:

Did the Commonwealth Court plainly misapply the applicable standard of review, given the substantial public importance, and pressing public need for, the project for which zoning relief was properly awarded (conversion of the property to apartments for low-income seniors), where the court's reversal of the well-supported zoning relief threatens completion of the project due to potential loss of substantial and necessary federal funding?

*Marshall v. City of Philadelphia,* 73 A.3d 525, 526 (Pa.2013).

Under the Philadelphia Zoning Code,[9] the ZBA is authorized to issue variances under certain circumstances, as follows.

§ 14–1801. Jurisdiction and Powers.

(1) The Zoning Board of Adjustment may, after public notice and public hearing:

\* \* \*

(c) authorize, upon appeal, in specific cases, such variance from the terms of this Title as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of this Title would result in *unnecessary hardship,* and so that the spirit of this Title shall be observed and substantial justice done, subject to such terms and conditions as the Board may decide.

Phila. Zoning Code § 14–1801(1)(c) (emphasis added).

▮▮▮▮ Section 14–1802(1) of the Zoning Code sets forth specific criteria that the ZBA must consider in determining whether to grant a variance. This Court has "boiled down"

9. As we have previously explained, the Municipalities Planning Code (MPC) grants to each municipality the authority to enact and enforce zoning ordinances. *See Wilson v. Plumstead Township Zoning Hearing Board,* 594 Pa. 416, 936 A.2d 1061, 1064 (2007); 53 P.S. § 10601. Philadelphia has enacted its own Zoning Code, which accordingly must be applied to zoning cases arising in Philadelphia. *Id.* at 1065, 1067. However, the requirements for the grant of a variance under the Philadelphia Zoning Code and the MPC are coterminous in several respects. *Id.* at 1067. Throughout this opinion, as in prior decisions, we cite relevant precedent not just from Philadelphia, but also from municipalities throughout the Commonwealth. *Id.* at 1065.

the § 14–1802(1) criteria into three key requirements: "(1) unique hardship to the property; (2) no adverse effect on the public health, safety or general welfare; and (3) ... the minimum variance that will afford relief at the least modification possible." *East Torresdale Civic Association v. Zoning Board of Adjustment of Philadelphia County*, 536 Pa. 322, 639 A.2d 446, 447 (1994). The hardship must be unique to the property at issue, not a hardship arising from the impact of the zoning regulations on the entire district. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637, 640 (1983). In addition, the special conditions or circumstances forming the basis for the variance must not have resulted from the actions of the party seeking the variance. § 14–1802(1)(d). The party seeking the variance bears the burden of proof. *Valley View, supra* at 640.

This Court has previously held that, in the context of use variances, "unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; **or** (2) the property can be conformed for a permitted use only at a prohibitive expense; **or** (3) the property has no value for any purpose permitted by the zoning ordinance." *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43, 47 (1998) (citing *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh*, 547 Pa. 163, 689 A.2d 225, 227–28 (1997)); *see also Eighteenth & Rittenhouse Associates v. Zoning Board of Adjustment*, 26 Pa.Cmwlth. 554, 364 A.2d 973, 975 (1976) (same, in a decision affirming the Philadelphia Zoning Board's denial of a variance).

▮ This Court has repeatedly made clear that in establishing hardship, an applicant for a variance is *not required* to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose. On several occasions, we have reversed the Commonwealth Court when it had relied on such a standard for unnecessary hardship in reversing the grant of a variance. *See, e.g., Hertzberg, supra* at 50 (rejecting the Commonwealth

Court's unnecessary hardship standard, which required an applicant for a variance to demonstrate that the property at issue could not be used for any permitted purpose); *Allegheny West, supra* at 228 & n. 3 (rejecting the Commonwealth Court's holding that unnecessary hardship can be established only by showing that the property at issue is practically valueless as zoned); *Valley View, supra* at 641 (rejecting the Commonwealth Court's view that evidence of unnecessary hardship is not conclusive absent a showing that the property at issue is practically valueless as zoned). Showing that the property at issue is "valueless" unless the requested variance is granted "is but one way to reach a finding of unnecessary hardship; it is not the only factor nor the conclusive factor in resolving a variance request." *Hertzberg, supra* at 48. Rather, "multiple factors are to be taken into account" when assessing whether unnecessary hardship has been established. *Id.* (citing *Allegheny West* ).

Furthermore, we have never required a property owner seeking a variance to present direct evidence as to the value of the property as zoned. *Valley View, supra* at 641–42. In addition, although evidence of a property owner's inability to sell may be probative, *id.,* we have concluded that it is "unreasonable to force a property owner to try to sell his property as a prerequisite to receiving a variance." *Allegheny West, supra* at 228.

 Although a property owner is not required to show that his or her property is valueless unless a variance is granted, "[m]ere economic hardship will not of itself justify a grant of a variance." *Wilson v. Plumstead Township Zoning Hearing Board,* 594 Pa. 416, 936 A.2d 1061, 1069 (2007) (citation omitted). In *Valley View, supra* at 640, we explained that "mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance." Particularly where a variance is sought in order to make a change from an existing use consistent with the zoning code to an inconsistent use, "the mere fact that the property would increase in value R if a variance were granted, is not of itself a sufficient basis" upon which to find unnecessary hard-

ship. *O'Neill v. Philadelphia Zoning Board of Adjustment,* 384 Pa. 379, 120 A.2d 901, 904 (1956); *see also Wilson, supra* at 1070 ("A variance will not be granted because a zoning ordinance deprives the landowner of the most lucrative and profitable uses.") (internal quotation marks and citation omitted).

However, a zoning board's discretion is "not so circumscribed as to require a property owner to reconstruct a building to a conforming use regardless of the financial burden that would be incident thereto. Especially is this true where the change sought is from one nonconforming use to another more desirable nonconforming use that will not adversely affect but better the neighborhood." *O'Neill, supra* at 904; *see also Halberstadt v. Borough of Nazareth,* 546 Pa. 578, 687 A.2d 371, 373 (1997) (in a case in which a variance was granted for a massive, legally non-conforming, one-story building erected in 1914, stating that "[p]roperty owners are not required to reconstruct a building to a conforming use regardless of the financial burden."). Thus, economic factors are relevant, albeit not determinative, in a variance assessment.

It is the function of the zoning board to determine whether the evidence satisfies the criteria for granting a variance. *East Torresdale, supra* at 447. The zoning board, as fact-finder, is the sole judge of credibility. *In re Petition of Dolington Land Group,* 576 Pa. 519, 839 A.2d 1021, 1026 (2003); *Nettleton v. Zoning Board of Adjustment of the City of Pittsburgh,* 574 Pa. 45, 828 A.2d 1033, 1041 n. 10 (2003) (citing *Valley View, supra* at 642).

Under our standard of review, when, as here, the trial court did not take any additional evidence, an appellate court is limited to determining whether the zoning board committed an abuse of discretion or an error of law in rendering its decision. *Township of Exeter v. Zoning Hearing Board,* 599 Pa. 568, 962 A.2d 653, 659 (2009); *Noah's Ark Christian Child Care Center, Inc. v. Zoning Hearing Board of West Mifflin,* 584 Pa. 9, 880 A.2d 596, 596 (2005), *per curiam* (citing *Valley View, supra* at 639). We may conclude that the

zoning board abused its discretion only if its findings are not supported by substantial evidence, which we have defined as "relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Exeter, supra* at 659; *see also Valley View, supra* at 640, 642 (same). An appellate court errs when it substitutes its judgment on the merits for that of a zoning board. *East Torresdale, supra* at 448.

After careful review of the Commonwealth Court's opinion in the instant case, we must conclude that the court erred by relying on an improper standard for unnecessary hardship and by substituting its judgment for that of the ZBA, thereby applying an incorrect standard of review. Relying on several prior decisions, including *Logan Square Neighborhood Association v. Zoning Board of Adjustment of the City of Philadelphia*, 32 Pa.Cmwlth. 277, 379 A.2d 632 (1977); *Davis v. Zoning Board of Adjustment*, 78 Pa.Cmwlth. 645, 468 A.2d 1183 (1983); *Zoning Hearing Board of the Township of Indiana v. Weitzel*, 77 Pa.Cmwlth. 108, 465 A.2d 105 (1983); and *Wagner v. City of Erie Zoning Hearing Board*, 675 A.2d 791 (Pa.Cmwlth.1996), the Commonwealth Court determined that to establish unnecessary hardship in the context of an application for a use variance, "a property owner must demonstrate that the entire building is *functionally obsolete* for any purpose other than one not permitted under the relevant zoning ordinance." *Marshall, supra* at 9 (emphasis added). The court then concluded that the Archdiocese had failed to present any evidence "demonstrating that it could not utilize the property [for] any of the several uses permitted in the R–10A Zoning District," and thus the ZBA had "improperly found that a unique hardship existed." *Id.* at 11. The Commonwealth Court has misinterpreted not only binding precedent from this Court but also its own prior decisions.[10]

10. Appellee likewise has misstated governing law. She repeatedly makes the erroneous assertion that, to obtain a use variance, an applicant must show that the subject property is "valueless." *See* Appellee's Brief at 11, 12. In addition, she incorrectly claims that "[i]f the Archdiocese can't show it is unable to build single family homes within the constraints of the Zoning Code it is not entitled to a

The Commonwealth Court's "functionally obsolete" standard appears to be merely a reiteration of the "practically value-less" standard, a standard for unnecessary hardship that we have repeatedly and explicitly rejected. *See* discussion in text, *supra* (citing *Allegheny West* and *Valley View*). Furthermore, we have also explicitly rejected the requirement that an applicant for a variance for a legally non-conforming property eliminate every possible permitted use. *See* discussion in text, *supra* (citing *Hertzberg*). Finally, we have never required demolition of a legally non-conforming structure to afford the opportunity to bring the property into compliance with the relevant zoning code.

The Commonwealth Court decisions cited by that court in the instant case are not contrary to the above principles. In *Logan Square, supra* at 634, and *Weitzel, supra* at 107, the court held that unnecessary hardship had been established in the context of a use variance for a legally non-conforming structure where the premises could not be converted to a permitted use without demolition and extensive reconstruction. The court determined that in such circumstances, more than "mere economic hardship" existed. *Logan Square, supra*, and *Weitzel, supra*. The court reached a similar conclusion in *Davis, supra* at 1185, and *Wagner, supra* at 798–99, cases involving applications for dimensional variances. In *Price, supra* at 197, the court affirmed the grant of a dimensional variance, noting that even those objecting to the variance had conceded that without a variance, the property would be "practically valueless." However, contrary to the Commonwealth Court's implication here, *Price* did not *require* a showing of "practically valueless" to establish unnecessary hardship, and *none* of the above-cited decisions required a property owner to "demonstrate that the entire building is functionally obsolete for any purpose other than one not

variance." *Id.* at 18; *see also id.* at 21–23 (asserting that a single-family housing development could "succeed" at the subject property); N.T. ZBA Hearing, 1/5/11, at 24 (wherein Appellee claimed that an applicant for a variance must "explain to [the ZBA] why is it [sic] impractical to build single-family housing"). As we discuss in the text, these assertions are not consistent with governing law.

permitted under the relevant zoning ordinance." *Marshall, supra* at 9. Thus, the Commonwealth Court's articulation of a "functionally obsolete" standard for unnecessary hardship is unsupported—and unsupportable—even under its own cited precedent.

The Commonwealth Court acknowledged the ZBA's finding that "the Archdiocese established that the property had a unique physical structure that created a hardship under the operative zoning regulations." *Id.* at 5. However, the court dismissed as "speculation" the project architect's testimony that the building "would have gone vacant, [and] could have ended up as a nuisance." *Id.* at 11 (citing N.T. ZBA Hearing at 4). The Commonwealth Court seems to have ignored the undisputed facts that the structure at issue was a century-old, legally non-conforming school building, which not only was already vacant but also was already in need of repair. The Archdiocese never suggested that the property was practically valueless—nor, as we have explained *supra,* was it required to do so. Rather, the Archdiocese grounded its unnecessary hardship argument on its assertion that the property could be conformed for a permitted use only at a prohibitive expense. *See* Archdiocese's Brief at 31 (citing *Allegheny West,* 689 A.2d at 227–28). Based on the record before it, as well as its expertise in and knowledge of local conditions, the ZBA was certainly entitled to infer that the building could not be used for any permitted purpose without major, prohibitively expensive renovation.

We recognize and affirm our holding in *O'Neill,* 120 A.2d at 904, that a zoning board's discretion is "not so circumscribed as to require a property owner to reconstruct a building to a conforming use regardless of the financial burden that would be incident thereto[, e]specially . . . where the change sought is from one nonconforming use to another more desirable nonconforming use that will not adversely affect but better the neighborhood." Here, the Archdiocese was awarded a grant of nearly ten million dollars from HUD's Supportive Housing for the Elderly program to fund the renovation of a building from one non-conforming use to another more desirable non-

conforming use that would benefit the community. There is no question that withdrawal of the HUD funding to renovate the old building for senior housing would constitute a financial burden to the Archdiocese and also would negatively impact the mission of the Archdiocese's Catholic Health Care Services.[11] Furthermore, the ZBA found that, "although the Subject Property served the community well for a long time as a school, the Subject Property can better serve the needs of the community as low income housing for seniors." Findings of Fact and Conclusions of Law of the Philadelphia Zoning Board of Adjustment at 8 ¶ 6. The ZBA also found that the project had "overwhelming support" from the community, and that the proposed use of the property "would be less burdensome on the community" than the prior use.[12] *Id.* at 8–9 ¶¶ 6, 7, 13. In reaching its decision, the ZBA considered "the unique nature of HUD's approval of this project," and recognized that the Archdiocese's "long-term commitment to the Subject Property and its development will transform this vacant building and provide a new use to serving community members." *Id.* at 8–9 ¶¶ 6, 13.

These various factors, cited by the ZBA, place the instant case squarely within *O'Neill's* precedential holding. We hold that the ZBA acted well within its discretion here in concluding that the Archdiocese had established unnecessary hardship and in granting the use variance for conversion of the property to low-income senior housing.

Finally, the Commonwealth Court's resolution of the parking issue comprised the following four sentences:

Similarly, with respect to the issue of parking, the Archdiocese offered no evidence explaining why it could not construct 19 parking spaces in conformance with the Zoning Code. Instead, representatives for the Archdiocese merely offered speculation that most of its residents would not own

---

11. Catholic Health Care Services avers that it is "committed to the Church's preferential option to serve the poor, and so [it] strive[s] to serve those in need with compassion and through responsible stewardship." *www.catholichealthcareservices.org.*

12. The Commonwealth Court's opinion did not address these factors.

cars, and that it planned to petition the City to remove "no parking signs" which would create additional parking spaces for its residents. The Archdiocese cannot merely rely on the City to take such action; it must demonstrate by substantial evidence that it would not be feasible to construct the number of parking spaces required by the Zoning Code. Here, the Archdiocese failed to do so.

*Marshall, supra* at 12.

The Commonwealth Court has incorrectly stated prevailing law and also has failed to grant proper deference to the ZBA with respect to its factual findings. Specifically, the court offered no support—and we are aware of none—for its legal conclusion that the Archdiocese must demonstrate that it was not feasible to "construct" the required number of parking spaces. While the meaning of "construct" in this context is not entirely clear, it is abundantly clear that the court gave no deference to the ZBA's findings that the Archdiocese's proposed parking arrangements "would not adversely impact the health, safety and welfare of the surrounding community," and "would not substantially or permanently injure the appropriate use of adjacent conforming properties." Findings of Fact and Conclusions of Law of the Philadelphia Zoning Board of Adjustment at 8–9 ¶¶ 7, 9. The court also failed to mention the fact that the "No Parking" signs that the Archdiocese would petition the City to remove barred parking during school hours, and thus were indisputably no longer necessary or appropriate because the building is no longer used as a school. We hold that the ZBA did not abuse its discretion in accepting the Archdiocese's stated method as to how it would provide the necessary parking spaces.

In sum, our conclusion here is the same as in *East Torresdale, supra.* While an appellate court might disagree with the ZBA's decision, the decision "was within the bounds of reason and therefore represented a sound exercise of discretion. The Commonwealth Court's decision indicates no evidence to the contrary. There was no abuse of discretion here. It was error, therefore, for the Commonwealth Court to substitute [its] judgment on the merits for that of the Zoning Board.

Doing so was beyond the scope of [the court's] power to review." *Id.* at 448.

For the foregoing reasons, we reverse the order of the Commonwealth Court, and we reinstate the order of the court of common pleas affirming the Zoning Board of Adjustment.

Chief Justice CASTILLE, Justices SAYLOR, BAER, TODD and STEVENS join the opinion.

Justice EAKIN files a dissenting opinion.

Justice EAKIN, dissenting.

I respectfully dissent, as I find the Commonwealth Court followed the proper standard of review in reversing the Philadelphia Zoning Board of Adjustment's grant of the variance. An applicant for a variance bears the burden of proving: "(1) unique hardship to the property; (2) no adverse effect on the public health, safety or general welfare; and (3) the variance will represent the minimum variance that will afford relief at the least modification possible." *East Torresdale Civic Association v. Zoning Board of Adjustment of Philadelphia County,* 536 Pa. 322, 639 A.2d 446, 447 (1994). An applicant may prove unnecessary hardship by establishing: "(1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) [ ] the property can be conformed for a permitted use only at a prohibitive expense; or (3) [ ] the property has no value for any purpose permitted by the zoning ordinance." *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh,* 554 Pa. 249, 721 A.2d 43, 47 (1998) (citation omitted).

At the evidentiary hearing before the Board, appellant only offered evidence demonstrating its proposed use would receive substantial federal funding and overwhelming support from the community; however, it did not submit any evidence related to the three methods of proving hardship enumerated in *Hertzberg.* While such funding for church-owned property is indisputably remarkable and appellant's proposed use is certainly laudable, these particular points are inapposite to the case. The potential loss of federal monies if a variance is not

granted does not constitute hardship, and the proposed socially salutary use does not carry the day. The question is not whether this would be a great use of the property—it is whether appellant proved other uses were uniquely impossible.

Because appellant presented no evidence relevant to "unique hardship," it failed to prove the need for a variance—a burden it was required to meet, not one the Board may assume has been shown. *But see* Majority Op., at 388–400, 97 A.3d at 332–33 (emphasis added) ("Based on the record before it, as well as its expertise in and knowledge of local conditions, the [Board] was certainly entitled to *infer* that the building could not be used for any permitted purpose without major, prohibitively expensive renovation."). The Commonwealth Court applied the proper standard and determined the Board's findings were unsupported by substantial evidence. *See Marshall v. City of Philadelphia and Zoning Board of Adjustment*, No. 244 CD 2012, unpublished memorandum at 7–11, 2012 WL 8668261 (Pa.Cmwlth. filed October 11, 2012) (citations omitted). Specifically, the court noted:

> [Appellant] offered no evidence whatsoever demonstrating that the property could not in any case be used for any other permitted purpose, that it could only be used for such purposes at a prohibitive expense, or that it has no value for any purpose permitted by the Zoning Code.
>
> . . . [T]he testimony never actually addressed the issue of why there was a unique hardship to the property warranting the granting of variances.

*Id.*, at 9–10. With this I must agree, and hence I respectfully dissent.