IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of:                               :
AZ Broad Street LLC                      :    No. 1354 C.D. 2021
                                         :
From a Decision of:                      :    Submitted:  December 4, 2023
Zoning Board of Adjustment               :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                      FILED:  January 22, 2024

        The City of Philadelphia (the City) appeals from the order entered in
the Court of Common Pleas of Philadelphia County (trial court), reversing the order
of the Zoning Board of Adjustment (ZBA), which had denied an application for a
use variance filed by AZ Broad Street, LLC (Applicant) in connection with the
development of a vehicle equipment sales facility.  After careful review, we deny
Applicant's application to quash the City's appeal and reverse.

## I. BACKGROUND[1]

        In 2019, Applicant purchased a 19,053-square foot lot located at the
northeast corner of North Broad Street and Medary Avenue[2] in the City of
Philadelphia (Property).  The Property is in a CMX-2.5 Commercial Zoning District

_____

[1] Unless otherwise stated, the recitation of facts is derived from the ZBA decision.  *See*
ZBA Decision, 12/9/20, at 1-9.
[2] The ZBA decision incorrectly identifies the street name of the intersection on which the
Property is located as "Mediary" Avenue.  This Court takes judicial notice that the proper spelling
of the avenue is "Medary."

but has been used for auto-related uses since 1933,[3] including as a gas station and for new car sales. *See* Notes of Testimony (N.T.), 10/6/20, at 9-10; Agreement of Sale, 5/16/19. The surrounding area includes gas stations, used car lots, auto repair garages, collision shops, car washes, and tire shops, as well as near and adjacent residences. *See* N.T., 10/6/20, at 9, 46-48; N.T., 12/2/20, at 17-18. The Property currently consists of a "one story dilapidated structure defaced with graffiti and a parking lot that is filled with nonworking damaged vehicles, old tires and weeds . . . essentially a junk yard." *See* N.T., 10/6/20, at 9.

On January 22, 2020, Applicant filed a zoning/use registration application with the Department of Licenses & Inspections (L&I) for the proposed demolition of the existing structure on the Property and construction of a 6,000 square foot, one-story AutoZone retail building. The proposed use was identified as "vehicle equipment sales."[4] L&I determined that the proposed use was prohibited in the CMX-2.5 zoning district and that the proposed side yard did not meet the Zoning Code's (Code) minimum 5-foot depth requirement. Accordingly, on February 17, 2020, L&I issued a notice of refusal.

Applicant timely appealed the denial to the ZBA, which held evidentiary hearings on October 6, 2020, and December 2, 2020.[5] Of note, Applicant presented expert testimony asserting that it was impracticable to develop the

---

[3] Under a prior version of the Code, the Property was zoned C-2. *See* Philadelphia Zoning Code § 14-303 (2012). Pursuant to the previous C-2 zoning, sales of automobiles and parts were a permitted use. *See id.* In 2005, for example, the ZBA approved the Property for use as an Advanced Auto Parts store, but the plans were never realized. *See* Notes of Testimony (N.T.), 10/6/20, at 9. However, in 2013, the Code was significantly amended, and the Property re-zoned with the current designation. In CMX-2.5 districts, vehicle equipment and supply sales are not a permitted use. *See* Philadelphia Zoning Code § 14-402 (2013); *see also* Table 14-602-2 (2013).

[4] Applicant also sought a dimensional variance.

[5] The ZBA also convened on November 10, 2020, but no evidence was taken; the matter was continued. *See* N.T., 11/10/20, at 1-4.

Property for a permitted use. *See* N.T., 10/6/20, at 13-27. Further, given the Property's history of automotive-related uses, the City Planning Commission did not object to a variance. *See* N.T., 12/2/20, at 39. Nevertheless, the office of the local councilwoman, as well as the registered community organization (RCO) for the neighborhood, opposed the project.[6] *See id.* at 8-12, 13-14.

The ZBA denied the appeal, concluding that Applicant had not proven an unnecessary hardship. *See* ZBA Decision, 12/9/20, at 10-13 (specifically rejecting Applicant's expert testimony as not credible). Applicant timely appealed to the trial court, and the City opposed the appeal.[7] Following briefing and oral argument, the trial court issued an order finding that the ZBA had abused its discretion, reversing the ZBA's decision, and remanding with instructions to grant the variance. *See* Trial Ct. Op., 3/14/22, at 7-10.

The City timely appealed to this Court.[8]

---

[6] Prior to the hearings, the Oak Lane Community Action Association (OLCAA), which is the RCO, had supported the application. N.T., 10/6/20, at 28-38.

[7] Initially, Applicant requested both dimensional and use variances, both of which were denied. *See* Trial Ct. Op., 3/14/22, at 5. On appeal to the trial court, Applicant challenged the denial of the use variance but, based upon a stipulation to revised plans which resolved the need for a dimensional variance, did not challenge the denial of the dimensional variance. *See id.* The dimensional variance is not a subject of this appeal.

[8] Applicant has filed an application to quash the City's appeal. *See* Appl. to Quash, 3/8/22, at 1-2. First, Applicant contends that the City does not have standing to appeal. *See id.* However, Applicant did not challenge the City's standing to participate in the proceedings before the trial court. This contention is therefore waived. *See Twp. of Bristol v. 1 Enters., LLC*, 177 A.3d 1045, 1051 (Pa. Cmwlth. 2018) (noting that objections to lack of standing must be raised at the earliest opportunity and are waived if not properly raised). Second, Applicant contends that the City waived its issues due to its failure to address in its brief before the trial court Applicant's assertions that (1) the history of the Property is evidence of the hardship; (2) there is no adverse impact to the community; and (3) the use variance requested represents the minimum variance that will afford relief. *See* Appl. to Quash at 9-10. However, because the historical use of the Property was both discussed before the trial court and in the trial court's opinion pursuant to Pa.R.A.P. 1925(a), and because the additional issues regarding the variance were sufficiently preserved in the City's

## II. ISSUE[9]

The City contends that substantial evidence supported the ZBA's conclusion that Applicant failed to establish an unnecessary hardship.[10]  *See* City's Br. at 3.

brief, we decline to find waiver for this reason.  Accordingly, we deny Applicant's application to quash the City's appeal.

[9] The parties presented no additional evidence to the trial court.  Therefore, our review is limited to determining whether the ZBA committed an abuse of discretion or an error of law. *Taliaferro v. Darby Twp. Zoning Hr'g Bd.*, 873 A.2d 807, 811 n.1 (Pa. Cmwlth. 2005).  As a result, "[w]e do not address any argument related to the trial court's decision."  *See Pham v. Upper Merion Tp. Zoning Hr'g Bd.*, 113 A.3d 879, 887 n.6 (Pa. Cmwlth. 2015).  "Assuming the record contains substantial evidence, we are bound by the [ZBA's] findings that result from resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence." *Macioce v. Zoning Hr'g Bd. of the Borough of Baldwin*, 850 A.2d 882, 887 n.9 (Pa. Cmwlth. 2004).  A zoning board may reject "even uncontradicted testimony it finds lacking in credibility, including testimony offered by an expert witness."  *See Taliaferro*, 873 A.2d. at 811 (citation omitted).  "In Pennsylvania, the test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. Qualification of an expert witness rests within the sound discretion of the [fact-finder], and absent an abuse of that discretion, the decision of the [fact-finder] should be upheld."  *Crystal Forest Assocs., LP v. Buckingham Twp. Supervisors*, 872 A.2d 206, 215 (Pa. Cmwlth. 2005) (citations omitted).

[10] The City also contends that the trial court usurped the ZBA's role as the fact-finder in these proceedings.  *See* City's Br. at 11-14.  The City specifically rejects the trial court's criticism that the ZBA did not credit Applicant's unrebutted evidence.  *See id.*  The City notes that it may do so, that it may reject in whole or in part the testimony of any witness, and that it need not cross-examine witnesses before questioning their credibility.  *See id.* at 9-14.  In holding otherwise, the City reasons, the trial court improperly shifted the burden of proof away from Applicant.  *See id.* at 13.  There is simply no precedent, according to the City, that would require it, the ZBA, or any objecting party to "disprove unnecessary hardship by providing evidence or testimony regarding the feasibility of permitted uses."  *Id.* at 13-14.  The City raises an additional argument that the trial court improperly limited the decision-making authority of the ZBA by finding that the ZBA was bound by a prior decision to grant a similar variance to a previous owner, absent evidence of changed circumstances.  *See* City's Br. at 3-4.

We agree that the trial court erred in finding that the ZBA had erred by failing to consider the 2005 variance and explain how or why circumstances had changed since the grant of that variance.  *See* Order, 10/28/21.  As noted above, the Code was amended in 2013 to specifically exclude automotive-related uses.  Additionally, pursuant to the Code, variances expire if not acted upon within three years.  *See* Philadelphia Zoning Code § 14-303(10) (2013).   If the permit

4

## III. DISCUSSION

### A. The Parties' Arguments

The City contends that Applicant was not entitled to a use variance because it failed to establish an unnecessary hardship. *See* City's Br. at 7. The City notes, for example, that an applicant must establish "unique physical circumstances or conditions" that preclude any possible use that conforms to the Code, thus necessitating a variance to enable a viable economic use of the subject property. *Id.* at 8-9 (quoting Philadelphia Zoning Code § 14-303(8)(e)(.2)). However, according to the City, Applicant limited its evidence to alleged difficulties with "certain permitted uses" but failed to account for "any of the other myriad permitted uses." *Id.* at 10.[11]

Moreover, the City asserts that Applicant's emphasis on the abundance of similar, auto-related uses in the surrounding area "misses the point" because an applicant must introduce evidence demonstrating circumstances or conditions that are unique to the Property itself, not the surrounding area. *Id.* at 14. Relatedly, the

---

expires, an applicant may apply for a new permit but "the application will be subject to all provisions as if the original permit had never been issued." *See id.* Further, after the abandonment of a variance or exception, the use "will not resume unless a new permit is issued, either as of right under then-existing Zoning Code provisions or by a new variance or special exception." *See id.* Accordingly, relying upon this 2005 variance would have been an improper consideration. The trial court was incorrect to assert that the ZBA had made a decision unsupported by substantial evidence for this reason. *See Taliaferro*, 873 A.2d at 811 n.1. However, because our review is limited to whether the *ZBA* committed an abuse of discretion, this error is not the end of our analysis. *See*, *e.g.*, *Pham*, 113 A.3d at 887 n.6.

[11] According to the City, Applicant presented evidence suggesting that the Property's shape and size made it difficult to accommodate "drive-through pharmacies and food establishments." *See* City's Br. at 10. The City noted specifically that CMX-2.5 allows building supplies and equipment sales, consumer goods, medical marijuana dispensaries, food, beverage, and grocery stores, pet supplies, sundries, pharmaceuticals, and convenience sales, wearing apparel, and accessories. *See id.* The Code allows for many other uses in addition to those singled out by the City here, both by right, and with a special exception. *See* Philadelphia Zoning Code, Table 14-602-2 (2013).

City rejects Applicant's reliance on the history of the Property, in particular Applicant's reference to a 2005-approval for a similar use. *Id.* at 14-15. According to the City, these are not appropriate considerations when evaluating a claim of unnecessary hardship. *Id.*

In response, Applicant asserts that it established a hardship unique to the Property. *See* Applicant's Br. at 11-12. According to Applicant, even though the Property is zoned CMX-2.5, for nearly a century, it has never been used for a permitted use by right but, rather, always for auto-related uses.[12] *See id.* Applicant contends that because the Property is surrounded by extensive auto-related uses, uses other than auto-related uses are nearly impossible. *See id.* at 12. In addition, due to its location, configuration, and size, development of the Property in strict conformance with the Code is infeasible. *See id.*

## B. Decision of the ZBA

At the hearings in this case, the evidence established that the Property has been used for auto-related uses since 1933, including as a gas station and for new car sales. *See* N.T., 10/6/20, at 9-10. It is currently used as a junkyard storing inoperable vehicles. *See id.* Further, the majority of the surrounding uses are automotive related. *See id.*

In support of its application, Applicant presented testimony from Gregory Newell, a civil engineering and planning consultant for the project. Newell testified that he has appeared as an expert witness in nearly 500 different zoning

---

[12] Applicant states that the Property has "never been used for a permitted use" but under the former version of the Code, at least, automobile repair shops and automobile service stations were permitted with certificates. *See* Philadelphia Zoning Code, Title 14, approved October 1, 1962, and repealed August 22, 2012. A certificate is identical to a special exception in other zoning ordinances. *See Overbrook Farms Club v. Zoning Bd. of Adjustment of Phila.*, 405 A.2d 580, 581 (Pa. Cmwlth. 1979).

6

hearings over the years. *See* N.T., 10/6/20, at 12-18. His testimony as an expert was not challenged by the ZBA. *See id.*

According to Newell, an auto-related sales use was the only viable option for the Property, due to the small size for a commercial lot and the other permitted uses in the area. *See id.* at 14. Newell testified regarding certain other uses permitted in the CMX-2.5 zoning district, including a building supply store, a convenience store, a pharmacy, a coffee shop, or a daycare facility.[13] *See id.* at 15-18. However, he stated these uses were impossible due to space and parking constraints: the lot was not large enough for the curb cuts or drive-throughs that some of the proposed uses would require. *See id.* Newell stated that, logistically, the size of the lot and its limited accessibility options made it difficult to utilize the Property for purposes other than the proposed use. *See id.* at 18.

In addition to the testimony of Newell, Applicant presented the testimony of Marshall Cook, a regional manager of Auto Zone stores. *See* N.T., 10/6/20, at 24-26. His testimony concerned his familiarity with Auto Zone stores,

---

[13] A CMX-2.5 zoning district allows many permitted uses by right. *See* Philadelphia Zoning Code, Table 14-602-2 (2013). Some permitted uses by right include residences, passive recreation, adult care facilities, child care facilities, hospitals, libraries and cultural exhibits, safety services, business and professional buildings, sole medical, dental, or other health practitioners; government buildings; various retail uses including building supplies and equipment, consumer goods, and medical marijuana dispensaries; food, beverage and grocery stores, pets and pet supplies, sundries, pharmaceuticals, and convenience sales; wearing apparel and accessories sales; various commercial uses including animal services, business support, eating and drinking establishments including prepared food shops and sit-down restaurants, financial services, maintenance and repair of consumer goods; personal services including body art services, radio, television and recording services, commissaries and catering services; industrial uses including artist studios and artisan industrial, research and development; and finally, urban agriculture uses including community gardens and market or community-supported farms. *See id.* With special exceptions, CMX-2.5 allows for personal care homes, active recreation, community centers, fraternal organizations, religious assemblies, transit stations, group medical, dental, or other health practitioners, assembly and entertainment, eating and drinking establishments including take-out restaurants and smoking lounges, and structured parking. *See id.*

generally. *See id.* Ron Bednar, representing the City Planning Commission, stated that given the historical *and* current use of the Property, the Commission had no objection to the application. *See* N.T., 12/2/20, at 39.

There was some disagreement at the evidentiary hearings regarding community support for the project, first in the October 2020 hearing and again in the December 2020 hearing. While the OLCAA RCO initially supported the project, it later withdrew its support. *See* N.T., 10/6/20, at 28; N.T., 12/2/20, at 28-29. Further, a representative of the local councilperson's office testified that near neighbors did not approve. *See* N.T., 10/6/20, at 28; N.T., 12/2/20, at 28-29. On the other hand, testimony adduced from one neighbor in December indicated that she and other neighbors on her block were not opposed to the project. *See* N.T., 12/2/20, at 23.

Based on this evidence, the ZBA concluded that the requested use was prohibited and that Applicant had not proven an unnecessary hardship. *See* ZBA Decision, 12/9/20, at 10-13. Specifically, the ZBA concluded that while the Property had historically been approved for auto-related uses, there were no physical impediments precluding a permitted use going forward. *See id.* at 12. The ZBA did not find Newell's expert testimony "valid" or "credible," particularly regarding other viable uses of the site. *See id.* at 13-14. The ZBA noted that the identification of similar surrounding uses was insufficient for the grant of a variance. *See id.* Specifically, the ZBA noted that although there are many automotive uses surrounding the Property, the lot itself is regularly shaped and there are a "myriad" of other retail and commercial uses permitted. *See id.* at 14. Therefore, the ZBA rejected Applicant's contention that the only possible use for the Property was a vehicle parts store as not credible or persuasive. *See id.* at 14. While the ZBA noted its general deference to the concerns of neighbors and RCOs, ultimately, it

concluded that even unanimous support of the community would be insufficient where an applicant did not establish an unnecessary hardship. *See id.*

## C. No Unnecessary Hardship

The party applying for a variance bears the burden of proof, and it is the function of the zoning board to determine whether the applicant has met the criteria for granting a variance. *Metal Green Inc. v. City of Phila.*, 266 A.3d 495, 506 (Pa. 2021). "A variance is a departure from the exact provisions of a zoning ordinance," and a use variance is permission to deviate from the ordinance regarding the use of the land. *S. Broad St. Neighborhood Ass'n v. Zoning Bd. of Adjustment*, 208 A.3d 539, 547 (Pa. Cmwlth. 2019); *see also Nowicki v. Zoning Hr'g Bd. of Borough of Monaca*, 91 A.3d 287, 291 (Pa. Cmwlth. 2014).

Generally, an applicant must prove that there is a unique hardship to the property; that there will be no adverse effect on the public health, safety, or general welfare; and that the requested variance is the minimum that will afford relief with the least modification possible. *See Marshall v. City of Philadelphia*, 97 A.3d 323, 329 (Pa. 2014); *see also Metal Green Inc.*, 266 A.3d at 508. These considerations are "[c]onsistent with the plain language of the Philadelphia Zoning Code." *See Metal Green, Inc.*, 266 A.3d at 510. The hardship must be unique to the property at issue, not arising from the impact of the zoning regulations on the entire district. *See Marshall*, 97 A.3d at 329. Further, the "special conditions or circumstances forming the basis for the variance must not have resulted from the actions of the party seeking the variance." *See id.*

With regard to use variances, parties may establish unnecessary hardship with evidence that "(1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a

9

permitted use only at a prohibitive expense; or (3) the property has no value for any purpose permitted by the zoning ordinance."[14] *See id.* at 329 (citing *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998)). This does not mean that an applicant must show the property is valueless without the variance or cannot be used for any permitted purpose. *See Marshall*, 97 A.3d at 330. In addition to the plain language of the Philadelphia Zoning Code, other elements may factor into the analysis, including the use of the adjacent or surrounding land, the blighted or abandoned nature of a property, or economics, although mere economic hardship alone will not justify the grant of a use variance. *See Metal Green Inc.*, 266 A.3d at 510; *Marshall*, 97 A.3d at 330; *see also Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983).

---

[14] Pursuant to the Code, to find an unnecessary hardship in the case of a use variance, the ZBA must make all of the following findings:

(.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;

(.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;

(.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(.d) That the hardship cannot be cured by the grant of a dimensional variance.

Philadelphia Zoning Code § 14-303(8)(e)(.2) (2013).

When the ZBA considers expert testimony, the question is "whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation," and that qualification is left to the discretion of the fact-finder. *See Crystal Forest Assocs., LP*, 872 A.2d at 215. Examining Newell's expert testimony, the ZBA considered whether (1) the issues addressed fell within his area of expertise; (2) whether his dual role as project engineer conflicted with his role as an expert witness; and (3) whether the conditions cited in support of his conclusions were legally sufficient to support a finding of hardship. *See* ZBA Decision, 12/9/20, at 12.

The ZBA concluded that Newell's testimony did not qualify him to testify regarding the "feasibility of developing the property for a permitted use," including "limitations presented by the [Code], market demands, and industry standards." *See id.* at 13. Further, according to the ZBA, because Newell had been hired by Applicant and because the project's success was contingent upon his testimony that other uses were not feasible, his testimony was not credible. *See id.* Finally, the ZBA rejected Newell's assertion that development options for the site were limited as not credible. *See id.* at 13-14. The ZBA observed that the limitations, which included the elimination of three of the site's four existing access driveways, were a result of Applicant's voluntary concession. *See id.* It is entirely within the ZBA's purview to reject uncontradicted expert testimony it finds lacking in credibility, where that decision is supported by the evidence of record, as the ZBA did in this case. *See Taliaferro*, 873 A.2d. at 811.

This does not end our inquiry. It is the applicant's burden to establish that it has met the criteria for a variance, and the ZBA concluded that Applicant had not done so. *Metal Green Inc.*, 266 A.3d at 506. In support of its position, Applicant

11

asserts that the hardship is that the Property has never been used for a permitted use, and that the surrounding uses are mostly automotive-related. *See* Applicant's Br. at 11-12. Applicant also points to the fact that the ZBA granted a prior variance in 2005 for a similar automotive and vehicle equipment sales use. *See id.*

We reject these assertions. The history of the Property and surrounding uses *may* be factors considered by the ZBA when determining unnecessary hardship. *See Metal Green Inc.*, 266 A.3d at 510; *Marshall*, 97 A.3d at 330; *see also Valley View Civic*, 462 A.2d at 640. Nevertheless, there are two reasons these considerations are irrelevant. First, the Code was revised in 2013 to specifically exclude automotive uses from this district; any surrounding use decided under the prior version of the Code is not relevant to the instant consideration. Second, although a variance was granted under a previous version of the Code, the variance has long expired and has no further legal effect. *See* Philadelphia Zoning Code § 14-303(10)(a)-(e) (2013) (permits and variances expire after three years; an abandoned permit shall not resume unless a new permit is issued either as of right under then-existing Code provisions or by a new variance or special exception).

Additionally, Applicant contends that the size and shape of the Property, including the need for curb cuts, make it impractical to use the Property for any permitted purpose in strict compliance with the Code. *See* Applicant's Br. at 21-24. However, the evidence of record does not support this claim. While Newell presented testimony that some of the permitted uses were not practical, the ZBA appropriately rejected his testimony as not credible. Moreover, testimony from the Auto Zone regional manager, Cook, was not relevant to any hardship factor. Further, while the support of the local community and the RCO may factor into the ZBA's consideration, that support alone cannot establish unnecessary hardship. *See*,

12

*generally*, *Metal Green Inc.*, 266 A.3d at 510; *Marshall*, 97 A.3d at 330; *Valley View Civic Ass'n*, 462 A.2d at 640.  Finally, while the ZBA did note the testimony of the City Planning Commission representative and his support of the project, this brief testimony does not establish undue hardship.

## IV. CONCLUSION

Applicant failed to introduce sufficient evidence to establish an unnecessary hardship.  *Metal Green Inc.*, 266 A.3d at 506.  Therefore, we discern neither legal error nor abuse of discretion in the ZBA's decision denying the application for the use variance.  *Metal Green Inc.*, 266 A.3d at 506.  Accordingly, the trial court erred in reversing the order of the ZBA.  *See Marshall*, 97 A.3d at 329; *Taliaferro*, 873 A.2d at 811 n.1.  For these reasons, the trial court's order is reversed.

LORI A. DUMAS, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of:                              :
AZ Broad Street LLC                     :
                                        :    No. 1354 C.D. 2021
From a Decision of:                     :
Zoning Board of Adjustment              :

# **O R D E R**

AND NOW, this 22nd day of January, 2024, the Application to Quash Appeal, filed by AZ Broad Street LLC on March 8, 2022, is DENIED, and the order entered by the Philadelphia County Court of Common Pleas on October 29, 2021, is REVERSED.

 

LORI A. DUMAS, Judge