# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jethro Heiko and Chelsea      :
Thompson-Heiko and Edward Verrall,  :
          Appellants      :
     :
     v.      :   No. 1612 C. D. 2014
     :   Argued:  October 6, 2015
Philadelphia Zoning Board of      :
Adjustment and 1100 Delaware Avenue  :
Associates, L.P.      :


BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ANNE E. COVEY, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON          FILED:  October 30, 2015

Jethro Heiko, Chelsea Thompson-Heiko, and Edward Verrall (collectively, Appellants) appeal from an order of the Court of Common Pleas of Philadelphia County (trial court), which affirmed the order of the Philadelphia Zoning Board of Adjustment (ZBA), granting 1100 Delaware Avenue Associates, L.P.'s (DAA) petition for a use variance pertaining to a property located at 1106-1128 North Delaware Avenue, Philadelphia, Pennsylvania.  For the reasons discussed below, we reverse.

The trial court's order at issue in this case was one of four interrelated rulings issued on the same day, each of which concerned properties covered by a single Plan of Development (POD) known as the Canal Street North Project (Canal Project).  The Canal Project consists of six properties, four of which are the subjects of separate appeals:  1000 Frankford Avenue (Frankford Property),

33-51 Laurel Street (Laurel Property), 29-45 Poplar Street (Poplar Property), and 1106-1128 North Delaware Avenue (Delaware Property).[1] Although each property is managed by a separate entity, all of the properties are owned by the same developer, Michael Samschick.

The Canal Project centers on the Frankford Property and the Ajax Building located therein. The Ajax Building is a 150,000 square-foot, two-story building that covers approximately eighty-five percent of the Frankford Property. The Ajax Building is a former warehouse which has been vacant for more than a decade and is deteriorated. It is the largest piece of the proposed development and encompasses the following proposed uses: (1) a 3,000-person capacity Live Nation concert venue, consisting of a two-story space with a stage at one end, open areas in the middle, and seating around the second tier; (2) a two-story bowling alley and restaurant (sports restaurant) with twenty bowling lanes and bocce courts; (3) a distillery, manufacturing small-batch vodka, gin, and spirits, with administrative offices and a small tasting room; (4) two proposed retail spaces and administrative offices; and (5) a second restaurant, located on the ground level and facing the Delaware River (first-floor restaurant).

Located across the street from the Ajax Building, the Laurel Property contains the Dry Ice Building. DAA plans to renovate the Dry Ice Building to be used as a country-western restaurant, Toby Keith's I Love This Bar and Grill (Western Grill). Additionally, DAA sought permission to use the Poplar and

---

[1] The related appeals are docketed as follows: *Heiko v. Philadelphia Zoning Board of Adjustment*, No. 1610 C.D. 2014 (Frankford Property); *Heiko v. Philadelphia Zoning Board of Adjustment*, No. 1722 C.D. 2014 (Laurel Property); and *Heiko v. Philadelphia Zoning Board of Adjustment*, No. 1611 C.D. 2014 (Poplar Property).

Delaware Properties (Lots C and D, respectively), non-adjoining lots, as off-site surface parking lots benefiting the Ajax and Dry Ice Buildings' attractions. Parking as a primary use is prohibited on Lots C and D by the Philadelphia Zoning Code (Zoning Code) due to their location within the Central Delaware Riverfront Overlay District. Thus, along with the variances and special exceptions for the Frankford and Laurel Properties, DAA sought variances allowing Lots C and D to be used as parking lots.

DAA's POD for the Canal Project was submitted to and reviewed by the Philadelphia City Planning Commission (Commission), as required by the Zoning Code. The Commission approved the Canal Project, explaining that "this development is consistent with the *Philadelphia 2035 Comprehensive Plan* objectives calling for the repurposing of former industrial sites for new uses, developing transition plans for obsolete industrial sites and districts, and preserving industrial heritage where necessary." (Reproduced Record (R.R.) 433a.) The Commission's approval was conditioned on DAA's acquisition of at least 500 parking spaces in nearby lots.

Janice Woodcock, acting on behalf of DAA, submitted applications to the Department of Licenses & Inspections (L&I) for zoning/use permits for the renovation of the Ajax and Dry Ice Buildings and the use of Lots C and D for parking. L&I issued refusals for each application, noting that the proposed uses were not permitted under the Zoning Code. As to the Frankford Property, L&I cited the following reasons for refusal:

(1) The concert venue is a prohibited use under Section 14-507(4)(c) of the Zoning Code;

3

(2) The distillery and bowling alley are not permitted uses under Table 14-602-2 in Section 14-602(4) of the Zoning Code;

(3) The restaurants require special exceptions under Section 14-503(8)(b)(.2) of the Zoning Code; and

(4) The restaurants require 51 parking spaces pursuant to Section 14-802(7)(c)(.1) of the Zoning Code, and none were provided.

Additionally, L&I cited a lack of parking and bicycle spaces, as required under Sections 14-802 & 14-802(7)(c)(.1) of the Zoning Code, and the need for a special exception for the Western Grill under Section 14-503(8)(b)(.2) of the Zoning Code for the refusal of the Laurel Property permits. Lastly, L&I issued refusals for the Poplar and Delaware Properties, in pertinent part, because parking as a main use is prohibited by Section 14-507(4)(e) of the Zoning Code and DAA did not submit the required pedestrian and vehicle traffic impact study. DAA appealed L&I's refusals to the ZBA.

Appellants filed a third-party appeal, claiming that L&I made multiple errors in its refusals of DAA's permits:

(1) The concert venue is an "assembly and entertainment use" prohibited by Section 14-503(8)(b)(.1) of the Zoning Code;

(2) The concert venue is more appropriately classified as a nightclub under Section 14-601(7)(c)(.3) of the Zoning Code and requires one parking space per two occupants under Section 14-802(7)(c)(.1)(b) of the Zoning Code, for a total of 1,500 parking spaces;

4

(3) The sports restaurant is prohibited by Section 14-503(8)(b)(.1) of the Zoning Code; and

(4) The distillery tasting room is prohibited by Section 14-503(8)(b)(.1) of the Zoning Code.

Jeanne Klinger, L&I's Code Administrator, then issued a memorandum titled "Correction of Refusal," which clarified and modified the original refusal in the following pertinent ways:

(1) The concert venue is deemed an "assembly and entertainment" use under Section 14-601(7)(c)(.3) of the Zoning Code—a prohibited use under Section 14-503(8)(b)(.1) of the Zoning Code;

(2) The bowling alley, originally treated as part of the sports restaurant, is deemed to be a separate "assembly and entertainment" use and prohibited under Section 14-503(8)(b)(.1) of the Zoning Code;

(3) The distillery tasting room is deemed to be a sit-down restaurant requiring a special exception; and

(4) A total of 892 parking spaces are required for all the proposed uses.

In sum, the multiple refusals for the Frankford Property fell into three categories: (1) failure to provide the required parking, which requires a dimensional variance; (2) use variances were needed for the concert venue, distillery, and bowling alley; and (3) special exceptions were required for the tasting room, sports restaurant, and first-floor restaurant. Ms. Klinger also refused to change the designation of the Western Grill from a sit-down restaurant to a

5

nightclub, because the Western Grill would be used primarily as a sit-down restaurant and would only occasionally have live music.

The ZBA held two hearings on the Canal Project. DAA asserted that the Frankford Property's unique characteristics—an irregularly shaped, 99,285 square-foot lot covered almost entirely by the Ajax Building, pocketed in between I-95 and the Sugar House Casino—meant that the Frankford Property could not support an economically-viable conforming use. DAA also argued that the Western Grill required only a special exception, because its main use was a sit-down restaurant.

DAA presented testimony from Michael Samschick, Ms. Woodcock, and Ms. Klinger. Mr. Samschick, the developer of the Canal Project, testified that he was unable to secure a conforming-use tenant for the Frankford Property due to its location, size, and deteriorated condition. He further testified that the Canal Project required a destination tenant, like Live Nation, to make the project economically feasible. Ms. Woodcock opined that the Commission was correct to only require 500 parking spaces because: (1) the Canal Project was a transit-oriented development; (2) urban planning seeks to strike a balance between parking and walkability; (3) parking is available at the Sugar House Casino; and (4) the overall goal was to create a vibrant waterfront neighborhood. Ms. Klinger testified that she classified the concert venue as an assembly and entertainment use, rather than a nightclub, because the broad category of assembly and entertainment was a better fit for the project than the specific sub-category of a nightclub. Lastly, DAA presented a traffic study prepared by Orth-Rodgers & Associates, Inc., which identified several potential problems, but overall concluded that the Canal Project

6

"will not significantly increase congestion on the public streets during the typical evening peak period." (R.R. 400a.)

Appellant presented expert testimony from Frank Montgomery, who prepared a traffic impact study for Appellants. Mr. Montgomery testified that the Canal Project would be detrimental to the neighborhood because it lacked an identified area to pick-up and drop-off passengers and provided an insufficient number of parking spaces. Mr. Montgomery opined that the Canal project required an additional 1,422 parking spaces under his interpretation of the Zoning Code. Appellants also presented testimony from Mr. Heiko and Mr. Verrall about the anticipated detriment to the neighborhood. Appellants argued that the variances and special exceptions should be denied because no legal hardship exists that would justify the variances, the requested variances are not the least-required variances, the Western Grill and concert venue are "nightclubs" under the Zoning Code requiring additional parking, and the scale of the project is inappropriate and will bring excessive traffic and crime to the area.

The ZBA granted DAA's appeal, with the proviso that DAA acquires at least 500 parking spaces. The ZBA's blanket approval of the Canal Project included: (1) the granting of use variances for the concert venue, bowling alley, and distillery on the Frankford Property, and parking as a main use on the Poplar and Delaware Properties; (2) the granting of a dimensional variance regarding the overall number of parking spaces; and (3) the granting of special exceptions for the Western Grill, the sports restaurant, the tasting room, and the first-floor restaurant.

Specifically in regards to the Delaware Property, the ZBA found that it is a 21,791 square-foot lot, with street frontage on three sides, and is currently being used as an illegal 69-space parking lot. (ZBA Order at 4-5.) The ZBA then

7

concluded that DAA satisfied the criteria for a use variance because "the Property's location limits the types of development that are feasible for the site," and the proposed use "would legalize an already existing use," would address "the need for adequate off-street parking" for the Canal Project, and has been reviewed and approved by the Commission. (ZBA Order at 9.)

Appellants appealed the ZBA's decision to the trial court, arguing that the ZBA lacked sufficient evidence to grant the use variance and that each property must be considered individually. The trial court denied Appellants' appeal, holding that the ZBA did not commit an error of law and that the record contained substantial evidence to support the granting of the variance. In its opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), however, the trial court concluded that the record "is devoid of any facts that would substantiate a conclusion that the Delaware Property is affected by any undue hardship, which would therefore necessitate the granting of a variance for it to be used as a parking lot." (Trial Ct. Op. at 21.) Furthermore, the trial court concluded, "neither the Zoning Code, nor the relevant case law, allows for one property's unique hardship to justify the granting of a variance pertaining to an entirely separate property." (*Id.*)

On appeal[2] to this Court, Appellants argue that there is no substantial evidence in the record to support the ZBA's finding that a hardship exists as to the

---

[2] When, as here, the trial court accepts no additional evidence in a zoning appeal, our review is limited to considering whether the ZBA erred as a matter of law or abused its discretion. *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 148 n.1 (Pa. Cmwlth. 2011). The ZBA abuses its discretion when its findings are not supported by substantial evidence, which is defined as "relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Marshall v. City of Philadelphia*, 97 A.3d 323, 331 (Pa. 2014).

8

Delaware Property, and, therefore, the ZBA erred in granting the variance allowing the Delaware Property to be used as a parking lot.

A variance is a departure from the exact provisions of a zoning ordinance. *Brennen v. Zoning Bd. of Adjustment of City of Connellsville*, 187 A.2d 180, 182 (Pa. 1963). Section 14-303(8)(e) of the Zoning Code sets forth specific criteria the ZBA must consider when determining whether to grant a variance. The Supreme Court has "boiled down" these criteria into three key requirements: "(1) unique hardship to the property; (2) no adverse effect on the public health, safety or general welfare; and (3) . . . the minimum variance that will afford relief at the least modification possible." *Marshall v. City of Philadelphia*, 97 A.3d 323, 329 (Pa. 2014) (alteration in original) (quoting *East Torresdale Civic Ass'n v. Zoning Bd. of Adjustment of Philadelphia Cnty.*, 639 A.2d 446, 447 (Pa. 1994)). Furthermore, "[t]he hardship must be shown to be unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on an entire district." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983). The party seeking the variance bears the burden of proof. *Marshall*, 97 A.3d at 329.

In this case, the entirety of the evidence offered by DAA to establish an undue hardship on the Delaware Property is a single statement by Ms. Woodcock, made during cross-examination, that the Delaware Property was subject to "the same conditions of the freeway, the noise, the blocking of the waterfront, [and] proximity to the casino" as the other Properties in the POD. (R.R. 209a.) Notably absent from the testimony of Ms. Woodcock and Mr. Samschick is any discussion of how or why these general area conditions result in a hardship particular to the Delaware Property, which is currently zoned

9

for industrial use. Furthermore, the ZBA's finding that the Property's location limited the feasible development is not supported by the record. DAA simply did not offer any evidence concerning the feasibility of developing the Property.

Instead DAA argued, as it does before this Court, that the Canal Project must be considered as a whole, that the Frankford and Laurel Properties suffer from undue hardships, and that the variance for the Delaware Property is necessary because it is needed to support the Canal Project. In essence, DAA is arguing that a property-specific hardship is not required to grant a variance when multiple properties are part of the same plan of development. DAA has not offered a single citation to any legal authority in support of this novel proposition, and this Court is not persuaded by DAA's bald assertion. As the trial court concluded,

> neither the Zoning Code, nor the relevant case law, allows for one property's unique hardship to justify the granting of a variance pertaining to an entirely separate property. To hold otherwise would effectively allow developers to sidestep the Zoning Code, giving them *carte blanche* in certain instances when seeking to develop projects that span multiple properties.

(Trial Ct. Op. at 21.)

Because there is no evidence of record establishing an undue hardship unique to the Delaware Property, the ZBA erred in granting the use variance. We, therefore, reverse the order of the trial court affirming the decision of the ZBA.


_____
P. KEVIN BROBSON, Judge


10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jethro Heiko and Chelsea
Thompson-Heiko and Edward Verrall,
                Appellants

           v.

Philadelphia Zoning Board of
Adjustment and 1100 Delaware Avenue
Associates, L.P.

:
:
:
:
:
:   No. 1612 C. D. 2014
:
:
:
:

## **O R D E R**

AND NOW, this 30th day of October, 2015, the order of the Court of Common Pleas of Philadelphia County, dated August 15, 2014, is hereby REVERSED.

_____
P. KEVIN BROBSON, Judge