# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

4th & Bainbridge Associates and    :
Jason Winig,    :
              Appellants    :
   :
        v.    :   No. 1069 C.D. 2019
   :   Argued: June 8, 2020
Zoning Board of Adjustment and    :
HR Bainbridge LP    :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED: July 30, 2020**


    4th & Bainbridge Associates and Jason Winig (Appellants) appeal from an order of the Court of Common Pleas of Philadelphia County (common pleas), dated June 19, 2019. Common pleas affirmed the decision of the Zoning Board of Adjustment of the City of Philadelphia (Board), which granted the application of HR Bainbridge LP (Owner) for dimensional variances. For the reasons discussed below, we will reverse common pleas' order.

    This matter concerns Owner's property located in the City of Philadelphia (City), which was formerly 10 contiguous parcels of real estate located at 413-431 Bainbridge Street and 629-631 East Passyunk Avenue (the Property). The Property totals about two-thirds of an acre and is bounded on the north by other

properties and on the other three sides by Bainbridge Street, East Passyunk Avenue, and Leithgow Street. Owner's principals have owned a portion of the Property and operated it as a 59-car public parking lot for many years. Owner acquired the 10 contiguous parcels between 2015 and 2018, prepared and obtained City approval of a lot consolidation plan, and, on May 18, 2018, executed a deed of consolidation combining the parcels to form the Property. (*See* Reproduced Record (R.R.) at 483a-89a.) Concurrently with that acquisition and consolidation, Owner created a plan to develop the Property with a six-story,[1] mixed-use building with ground-floor retail space, 149 parking spaces on the second, third, and fourth floors, and residential apartments on the remaining floors (the proposed use). The Property is located in the City's Community Commercial Mixed Use zoning district (CMX-3 district), which permits mixed-use buildings like the proposed use as of right. *See* Section 14-402(c)(.4) of the Philadelphia Zoning Code (Code).

On April 12, 2018, Owner filed an application for zoning and use approval with the City's Department of Licenses and Inspections (L&I), requesting a permit to proceed with the proposed use. On April 21, 2018, L&I issued a notice of refusal on the bases that the proposed use provided: (1) no setback of the building's balcony from the front lot line, whereas Section 14-604(5)(a) of the Philadelphia Zoning Code (Code) requires a five-foot setback; (2) only 6% open space, whereas Section 14-701(3) of the Code requires 20% open space; and (3) a floor area ratio of 510%, whereas Section 14-701(3) of the Code allows a maximum floor area ratio of 500%. (*See* R.R. at 500a.) On April 24, 2018, Owner filed an appeal of L&I's refusal with the Board. In the appeal, Owner sought variance relief based on

---

[1] Owner's proposed use initially called for seven stories, but Owner rearranged the building into six stories at the request of the community. (R.R. at 28a.)

an alleged unnecessary hardship imposed by strict application of the Code to the Property. Specifically, Owner requested dimensional variances from the three provisions of the Code upon which L&I relied in issuing its refusal.

On July 25, 2018, the Board held a hearing on the matter. Owner first presented the testimony of Jerry Roller, the architect who prepared the plan for the proposed use. He testified that, because the CMX-3 district has no height restriction, Owner could have constructed up to a nine-story building as of right but chose to construct the shorter building at the request of neighboring owners. (*Id.* at 29a.) Concerning the open space requirement in particular, Mr. Roller opined that it "really has no purpose in a mixed[-]use building like this." (*Id.* at 31a.) He explained that the ground-floor retail use requires all available square footage in order to satisfy the intended retail tenant's needs and that neither the retail tenant in the building nor retail tenants on adjacent properties would have any use for open space. (*Id.*) Mr. Roller then explained that, for the parking floors of the building "to work in the narrow dimensions," the plan could not accommodate the required open space on those floors either. (*Id.* at 31a-32a.) He added, however, that the remaining floors above the parking areas have about 35% open space. (*Id.* at 32a.) Finally, he testified that Owner planned the proposed use to include 149 parking spaces to satisfy the community's desire for public parking on the Property. (*Id.* at 33a-34a.)

Owner also presented the testimony of Dennis Glackin, a land planner retained by Owner to prepare a report on the need for the requested dimensional variances. Mr. Glackin testified that, in his opinion, the variances requested were *de minimis* and represented the minimum variances that would allow Owner to provide the parking area requested by community members. (*Id.* at 35a.) He also opined that the proposed use matches the character of the surrounding neighborhood

3

and would have no detrimental effect on the community. (*Id.* at 36a.) In addition to his testimony, Mr. Glackin prepared a memorandum concerning the requested variance relief, which was entered into the record before the Board. In the memorandum, Mr. Glackin stated that the Property is oddly shaped, which "makes efficient use of the ground floor critical in achieving a workable retail footprint." (*Id.* at 474a.) Specifically, he stated that, "[w]ithout the [o]pen [s]pace variance . . . , the first-floor space would become drastically compromised," and that altering the design to meet the open space requirement would "make . . . obtaining a major retail tenant unlikely." (*Id.* at 475a, 478a.) He also stated that the open space variance is the minimum variance that would make the retail space "practical and useable for a major tenant to occupy." (*Id.* at 476a.)

Several community members testified in opposition to the proposed use, expressing objection to the project's size, concerns about traffic and noise, and a concern that the proposed use—including the presence of a national retail tenant— would alter the neighborhood's character. In particular, Catherine Ciric testified that Target—the intended retail tenant for the ground floor space—currently operates a store elsewhere in the City that is smaller than the size proposed by Owner. (*Id.* at 58a.) Based on this, she opined that the variance from the open space requirement is not necessary to make the retail component of the proposed use viable. (*Id.*) In addition to the testimony of individual neighbors in opposition, a representative from a local registered community organization appeared at the hearing and testified in support, noting the organization's view that the requested variances are "relatively *de minimis*" and that the proposed use is an "overall positive investment" in the area. (*Id.* at 77a-78a.) Appellants did not offer any testimony at the hearing.

4

Immediately after the hearing, the Board voted unanimously to grant Owner's appeal and the requested variance relief. In its written decision, the Board made factual findings in the nature of a summary of the testimony offered at the hearing and other evidence in the record before the Board. The Board then made the following relevant conclusions of law:

1. The proposed development requires [a] dimensional variance[] for open area . . . .

. . . .

8. The Board concludes [Owner] here established entitlement to the requested dimensional variance[].

. . . .

10. The location and size of the [Property] are not self-created by [Owner]. These unique physical characteristics of the Property render it appropriate for a large-scale development project such as [Owner's]. Requiring significant change or total revision of the project poses an unnecessary hardship to [Owner], even if only economic hardship . . . .

11. Given the appropriately large scale of [Owner's] proposal to redevelop the Property, the Board concludes the requested dimensional variances are the minimum necessary to afford relief.

12. With respect to the dimensional variance requested to fall below minimum open area percentage, the Board notes the retail footprint of the proposed structure justifies a *de minimis* variation from the Code's requirement to a reduced percentage. The mixed-use nature of the building dictates more dense usage on the ground floors for retail, where open area might appear otherwise. Open area requirements are met at the higher residential stories of the structure.

13. The Board also notes that [Owner's] planned parking at the structure contributed to the need for an open area variance, and the resulting public garage will benefit area neighbors and businesses alike.

5

(Board's decision at 5-7.) Appellants appealed to common pleas, which affirmed the Board's determination.

On appeal,[2] Appellants contend that the Board abused its discretion in granting the open space variance.[3] They first argue that the Board's finding of unnecessary hardship was not supported by substantial evidence. In support of this, Appellants claim that Owner essentially admitted that no hardship exists and that Owner produced only vague, conclusory statements—rather than concrete, nonspeculative evidence—of unnecessary hardship. In making this argument, Appellants emphasize that the existing parking lot use and a building with 20% open space are economically viable uses of the Property. Second, Appellants argue that there was not substantial evidence to support the Board's finding that the requested variance was the minimum variance necessary to afford relief. Lastly, Appellants essentially claim that Owner itself created any unnecessary hardship with respect to the Property and that, accordingly, the Board erred in granting the requested variance.

In response, Owner argues that the Board's findings and conclusions were supported by substantial evidence. Specifically, Owner contends that it provided sufficient evidence to show unnecessary hardship under the relaxed standard of proof applicable to dimensional variances. Owner emphasizes that it was not legally

---

[2] "Where a trial court takes no additional evidence in an appeal from a decision of the Board, this Court is limited to considering whether the Board erred as a matter of law or abused its discretion." *German v. Zoning Bd. of Adjustment*, 41 A.3d 947, 949 n.1 (Pa. Cmwlth. 2012).

[3] According to common pleas, Appellants represented that they are not challenging most of the variances requested, including the floor area ratio going to 510% and the setback. (Common pleas' opinion at 2 n.1.) This is consistent with Appellants' arguments before common pleas and this Court, where they specifically mention and develop argument only with respect to the 20% open space requirement and the variance therefor. (R.R. at 501a-20a; Appellants' Br. at 4-23.)

6

required to show that other uses are completely unprofitable in order to demonstrate the requisite hardship. Owner next argues that it provided substantial evidence that the requested variance was the least necessary to afford relief. Finally, Owner insists that the Property's unnecessary hardship results not from Owner's actions but from the unique character of the Property.[4]

A variance is a departure from the exact provisions of a zoning ordinance. *Brennen v. Zoning Bd. of Adjustment of the City of Connellsville*, 187 A.2d 180, 182 (Pa. 1963).[5] The party seeking the variance must show substantial, serious, and compelling reasons for the variance request, including "that unnecessary hardship will result if the variance is denied." *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 148-49 (Pa. Cmwlth. 2011). "The hardship must be unique to the property at issue, not a hardship arising from the impact of the zoning regulations on the entire district." *Marshall v. City of Phila.*, 97 A.3d 323, 329 (Pa. 2014). An applicant "is not required to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose." *Id.* at 330 (emphasis omitted). Mere economic hardship, however, "will not of itself justify a grant of a variance." *Id.* (quoting *Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 936 A.2d 1061, 1069 (Pa. 2007)). In other words, "[m]ere hardship is not sufficient;

---

[4] Owner also argued in its brief to this Court and before common pleas that Appellants lack standing to appeal the Board's decision. At oral argument on June 8, 2020, however, Owner expressly waived its standing argument. Accordingly, we will not address the issue of standing in this opinion.

[5] This and some other authorities cited in this opinion address variances as governed by the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202 (MPC). Though the MPC does not apply to the City of Philadelphia, which is instead governed by the Code, we cite relevant precedent from the MPC context where there are no important differences between the provisions of the MPC and the Code. *See In re Chestnut Hill Cmty. Ass'n*, 155 A.3d 658, 663 n.5 (Pa. Cmwlth. 2017).

there must be *unnecessary* hardship." *Chestnut Hill*, 155 A.3d at 668 (emphasis in original) (quoting *Pincus v. Power*, 101 A.2d 914, 916 (Pa. 1954)).

When an applicant seeks a dimensional variance, as opposed to a use variance, the application is subject to a relaxed hardship standard requiring a lesser quantum of proof. Under this relaxed standard articulated by the Pennsylvania Supreme Court, we determine whether the applicant has demonstrated unnecessary hardship by considering "multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements[,] and the characteristics of the surrounding neighborhood." *Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 50 (Pa. 1998). Under those considerations, however, "the *property,* not the person, [must be] subject to hardship." *Yeager v. Zoning Hearing Bd. of the City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (quoting *Szmigiel v. Kranker*, 298 A.2d 629, 631 (Pa. Cmwlth. 1972) (en banc)) (emphasis in original). In other words, a conflict between dimensional zoning requirements and a landowner's preference for a certain layout does not, on its own, create a hardship meriting a variance under *Hertzberg*. *Id.* at 598.

"When an applicant seeks a variance for a property located in Philadelphia, the Board must also consider the factors set forth in the [Code]." *Singer*, 29 A.3d at 148. Section 14-303(8)(e)(.3) of the Code sets forth the factors the Board may consider in finding unnecessary hardship in the case of a dimensional variance. It recites, essentially verbatim, the factors from *Hertzberg*—"the economic detriment to the applicant if the variance is denied, the financial burden created by any work necessary to bring the building into strict compliance with the

8

zoning requirements[,] and the characteristics of the surrounding neighborhood." Section 14-303(8)(e)(.3) of the Code. Accordingly, the standard for showing an unnecessary hardship in the case of a dimensional variance is substantially identical under *Hertzberg* and the Code.

Owner's testimony before the Board regarding the alleged unnecessary hardship consists of several statements. These include the assertions that the ground-floor retail space requires as much square footage as possible, that the parking areas will only "work" with maximum square footage, that reducing the size of the ground floor space would "drastically compromise[]" it, and that altering the design to meet the open space requirement would "make . . . obtaining a major retail tenant unlikely." (R.R. at 31a, 457a, 478a.) At most, this testimony establishes that compliance with the Code's open space provision—which would entail reducing the size of the building—would prevent Owner from designing and using the building as it prefers, with its preferred retail tenant. None of the testimony explains, other than in a conclusory fashion, why compliance would adversely affect Owner's economic interests or the character of the surrounding community. Instead, Owner made a series of unsupported assertions that a building in compliance with the Code, which Owner could build as of right, simply will not work. Although, under both *Hertzberg* and the Code, we can consider the economic impact of the requested variance on Owner, Owner provided no specific, concrete evidence of the extent of that impact—*i.e.*, no testimony about *how much* of an economic impact a Code-compliant building would have on Owner's plans.

Owner repeatedly claims that it was not legally required to show that its proposed retail tenant would not accept a smaller plan that complied with the Code. (*See* Owner's Br. at 26 n.10, 30.) It also emphasizes that it need not show that the

9

Property's current use (as a parking lot) is unworkable. (*See id.* at 28.) Both of those arguments miss the mark. Although Owner need not demonstrate that the Property is *valueless* without the variance, it must show that compliance with the Code would impose an unnecessary hardship. Owner's preference for a larger building than the Code allows does not constitute such a hardship. Owner has not provided substantial evidence of an unnecessary hardship beyond disturbance of its preferred development plan. The conclusory statements Owner offered are simply not sufficient to meet its burden of demonstrating that the variance is *required* to remedy an unnecessary hardship, even under the relaxed standard of proof applicable to the dimensional variance at issue.

Indeed, it appears that Owner is seeking the open space variance for another purpose, at least in significant part—to allow a larger number of public parking spaces on the Property in order to make the proposed use more acceptable to the community. This is borne out in the email sent by Owner's affiliated developer, Michael Gorman, who admitted that "the by-right plan would yield no public parking—only enough to support the building's tenants . . . ." (R.R. at 471a.) Testimony before the Board confirms this, with Owner's witnesses explaining that the requested variance is necessary to support the 149 parking spaces that Owner desires and was requested "based on . . . providing parking for the neighborhood." (*Id.* at 35a.) While Owner's significant community outreach in connection with this project is admirable, the prospect of community opposition is not an unnecessary hardship that justifies the grant of a variance to allow Owner to make the proposed use more palatable. Nor has Owner taken the position that its contemplation of additional parking is related to its own economic interests or the "characteristics of the surrounding neighborhood" under *Hertzberg* and the Code. Accordingly,

10

Owner's perceived need for additional parking does not constitute the requisite hardship.

For these reasons, we hold that Owner did not produce substantial evidence of an unnecessary hardship, which is required to support the grant of the open space variance. The Board, therefore, abused its discretion in granting the variance, and common pleas erred in affirming the Board's decision.[6] Accordingly, we will reverse the decision of common pleas.

P. KEVIN BROBSON, Judge

---

[6] Given this conclusion, we need not address Appellants' remaining arguments on appeal. We note in passing, however, that if we were to address Appellants' next issue—whether Owner showed that the open space variance is the minimum variance that would afford relief—we would reach the same result for substantially the same reasons. As with hardship, Owner provided only conclusory statements that its request meets the minimum variance standard, without any explanation of why a smaller variance would not be adequate.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| 4th & Bainbridge Associates and<br>Jason Winig, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 1069 C.D. 2019 |
| | : | |
| Zoning Board of Adjustment and<br>HR Bainbridge LP | : | |

# **O R D E R**

AND NOW, this 30th day of July, 2020, the order of the Court of Common Pleas of Philadelphia County, dated June 19, 2019, is REVERSED.

_____
P. KEVIN BROBSON, Judge