# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marvin Cohen | : | |
| | : | |
| v. | : | No. 219 C.D. 2017 |
| | : | SUBMITTED: October 27, 2017 |
| Zoning Hearing Board of | : | |
| Montgomery Township | : | |
| and Montgomery Township | : | |
| | : | |
| Appeal of: Montgomery Township | : | |

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED: January 19, 2018**

Montgomery Township (the Township) appeals from an order of the Court of Common Pleas of Montgomery County (common pleas) reversing the decision of the Zoning Hearing Board of Montgomery Township (ZHB) to deny the 2013 application for a variance filed by *pro se* litigant Marvin Cohen. Previously, this Court issued an opinion concluding that the ZHB erred in determining that *res judicata* applied to Cohen's 2013 application for a variance and, accordingly, vacating and remanding the matter for consideration of that application on its merits based on the record developed before the ZHB. *Cohen v. Twp. of Montgomery*, (Pa. Cmwlth., No. 2284 C.D. 2014, filed August 14, 2015) ("*Cohen I*"). For the reasons that follow, we affirm.

The facts as found by the ZHB are as follows. In 1986, Cohen purchased and subdivided land in Montgomery County that became the residential development of Gwynmont Farms. In the absence of a public sewage facility, he developed the subdivision contingent upon the building of a temporary sewage treatment plant. Consequently, such a plant was located on the subject property (Lot 50). Situated in an R-2 residential zone at 131 Gwynmont Drive, Lot 50 consists of 8295 square feet. On the original subdivision plan, it was 20,000 square feet or more, the same as the other residential lots. During the subdivision process, however, the Chairman of the Montgomery Township Municipal Sewer Authority (Authority) "stated that 20,000 square feet was more ground than the authority would want *if they were [sic] to operate the plant* and he directed that Lot 50 should be made smaller." December 16, 2015, ZHB Decision, Finding of Fact (F.F.) No 10 (emphasis added). Accordingly, excess ground was conveyed to neighboring Lot 10.

In 1990, Gwynmont Farms Development Corporation (Development Corporation) sold Lot 50 to current owner Gwynmont Farms Utility Corporation (Utility Corporation). Cohen is the sole shareholder of both corporations. *Id*., Nos. 3, 6, and 15. Lot 50 served as the sewage plant from 1987 to 2004, when the Authority commenced service at its new plant. *Id*., No. 16. In 2004, the plant on Lot 50 was disconnected and "all of the concrete tanks in the ground were emptied, cleaned and disinfected." *Id*., No. 17. In 2005, the Public Utility Commission (PUC) withdrew approval for Lot 50's use as a sewage treatment facility. *Id*., No. 19.

After the conversion of the control building on Lot 50 into a small efficiency unit and the occupancy of one of Cohen's relatives, the Township issued a cease and desist order in 2009. In 2012, common pleas issued an order directing

2

that the owner of Lot 50 cease and desist from using the property as a residence and to evict any tenant residing there. No appeal was taken from that order. *Id.*, Nos. 21-24. Currently, the property consists of an abandoned sewage treatment plant and features tanks that have refilled with rainwater, a vandalized building, overgrown weeds, and a rusty and deteriorated chain-link fence. *Id.*, No. 18.

In August 2013, Cohen as sole shareholder of the Utility Corporation entered into an agreement of sale for Lot 50 listing himself and his wife as purchasers.[1] In his application for a variance, he seeks to build a house consisting of four bedrooms and three and one-half baths. The proposed house would fit within the required front, rear and side yard setbacks and Cohen would fill and cover the former wastewater tanks with clean topsoil. In addition, Lot 50 is served by a twenty-foot wide easement for drainage and access to the property. *Id.*, Nos. 25-27. Given its size, however, Lot 50 consists of only forty percent of the required lot area for the R-2 residential zoning district such that it would be approximately sixty percent smaller in area than the other lots in the R-2 district. *Id.*, Nos. 37 and 44.

Following a November 2015 public hearing, the ZHB denied Cohen's request for a variance. In support of its decision, the ZHB, *inter alia*, determined that (1) Cohen created the hardship of an undersized lot in a residential area requiring 20,000 square feet for a residential dwelling due to his corporation's conveyance of a portion of Lot 50 to adjoining Lot 10; and (2) the hardship was not a necessary hardship because there were other legal uses for Lot 50. Without taking additional evidence, common pleas reversed. The Township's appeal followed.

---

[1] The agreement, *inter alia*, provided for a purchase price of $100,000, with the buyer required to pay the seller $50,000 forty-five days after final zoning application approval. August 21, 2013, Agreement of Sale; Reproduced Record (R.R.) at 256-61a.

On appeal, we consider the interrelated issues of (1) whether the ZHB erred in determining that Cohen's hardship was self-created due to the conveyance; and (2) whether it erred in concluding that the hardship was not a necessary hardship due to the potential for other legal uses on the property.[2] Where, as here, common pleas takes no additional evidence and the issues raised present questions of law, our review is plenary. *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 n.1 (Pa. Cmwlth. 2005).

In considering the self-created hardship issue, we review the ZHB's findings as to how Lot 50 became undersized: (1) Lot 50 was 20,000 square feet on the original subdivision plan and a home would have been built there had public sewage been available; (2) the Sewer Authority Chairman directed that Lot 50 be made smaller; (3) Lot 50's excess acreage was conveyed to neighboring Lot 10, which became 39,781 square feet and was sold to a private party in 1988; and (4) the January 1987 recorded subdivision plan for phase one bore a note on Lot 50 indicating: "Lot Number 50 to be dedicated to [the] Authority and is reserved for location of proposed sewage treatment [plant]." December 16, 2015, ZHB Decision, F.F. No. 12. In addition, we note the testimony of the Township's zoning officer regarding that note: "[T]he reason for the lot size, 'based off the record, is for the sizing of the sewage treatment plant.'" *Cohen I*, slip op. at 6.

---

[2] The power of a zoning hearing board to grant a variance is limited to those circumstances in which the landowner proves that a zoning restriction imposes an unnecessary hardship due to unique physical conditions on his property that are not self-created; that the requested variance is necessary to enable a reasonable use of the property; that the grant of a variance will not alter the essential character of the neighborhood, nor substantially or permanently impair appropriate use or development of adjacent property, nor be detrimental to the public welfare; and that the requested variance represents the minimum variance that will afford relief and the least possible modification of the requirement. *Hunt v. Zoning Hearing Bd. of Conewago Twp.*, 61 A.3d 380, 384 n.7 (Pa. Cmwlth. 2013).

4

Notwithstanding its fact-findings, the ZHB nonetheless determined that Cohen's subsequent grant of Lot 50's excess square footage to Lot 10 established self-created hardship. In so concluding, it afforded significance to (1) Cohen's proffered evidence of selected portions of land development agreements between the Development Corporation and the Authority characterizing the sewage treatment plant as temporary in nature and indicating that it was to be used until the Authority's new Eureka Plant was completed; and (2) his credible admission that the nonconforming use on Lot 50 would be temporary in nature. *Id*., Nos. 14 and 42. We agree with common pleas that the ZHB's determination of self-created hardship was erroneous as a matter of law.

As the ZHB found, the Sewer Authority Chairman directed Cohen to make Lot 50 smaller because its size was greater than the Authority would want if it were to operate the plant pursuant to a subsequent dedication of Lot 50 to the Authority. As the zoning officer confirmed, the sizing of the sewage plant was the reason for the decreased lot size. Although Lot 50 ended up serving as a temporary sewage plant, the undisputed evidence reflects that it served as such for seventeen years. In that regard, the above-referenced portions of land development agreements were for subsequent phases of the development, when a new sewage treatment plant was on the horizon,[3] not at the time the lot was downsized and the subdivision plan recorded with a note that "Lot Number 50 to be dedicated to Montgomery Township Municipal Authority and is reserved for location of proposed sewage treatment [sic] plot." In any case, as we observed in *Cohen I*: "[R]egardless of how the lot became [undersized], it is undisputed that the Township approved an undersized lot for a private sewage treatment plant, that the [PUC] subsequently withdrew the plant's

---

[3] December 3, 2013, ZHB Hearing, Exhibit A-2; R.R. at 63-70a.

license to operate, and that the vestiges of that abandoned plant remain on a nonconforming lot located in an R-2 residential zone." *Cohen I*, slip op. at 7. Accordingly, we conclude that the ZHB erred in rendering a determination of self-created hardship. Instead, we conclude that the facts as found by the ZHB yields the conclusion that the undersizing of the lot is attributable to the Township and/or the Authority, and thus that the hardship (which the ZHB found to exist) was not self-inflicted. We turn to the ZHB's determination that Cohen failed to establish that the hardship was a necessary one because there were other legal uses for Lot 50.

Our Supreme Court has clarified that, even with respect to garden-variety variances, the applicant in establishing a hardship "is *not required* to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose." *Marshall v. City of Phila. and Zoning Bd. of Adjustment*, 97 A.3d 323, 330 (Pa. 2014) (emphasis in original). Additionally, as we noted in *Cohen I*: "A landowner . . . need not prove an inverse condemnation in order to satisfy the criteria necessary for a variance. The relevant criterion provides that, absent the variance, he is denied reasonable use of his property." *Id*., slip op. at 7 n.7. Here, the ZHB's conclusion rested on its noting that Lot 50 could lawfully be used for a wireless communication facility or a municipal park. However, it pointed to no evidence suggesting that such uses were viable, and we agree with common pleas that they are neither realistic nor reasonable.[4] Both of these proposed uses would require conveyance of the property to other entities, and in the absence

---

[4] Moreover, as common pleas noted: "This court is hard pressed to conclude that the proposed improvements to the existing building on Lot 50 would be less welcome than a wireless tower as well as the additional tax burden imposed on the residents of Montgomery Township in transforming Lot 50 into a recreational park." May 30, 2017, Opinion of Common Pleas at 8.

6

of evidence that anyone capable of operating a park or cell tower is likely to have any interest in doing so on Lot 50, such theoretical uses are merely illusory.

Accordingly, we affirm.[5]

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[5] Once again, the ZHB found it significant that "[t]he Township's zoning officer performed an exhaustive review of Township records and did not find any record that approved Lot 50 for use as a residence." December 16, 2015, ZHB Decision, F.F. No. 28. As we observed in *Cohen I*, there is no significance to the fact that there is nothing in the records or elsewhere to indicate that Lot 50 was ever approved for use as a residence or would automatically revert to residential use after serving as a sewage plant. In that regard, we noted that the fact that it was never approved for use as a residence was the point of the zoning applications. *Id*., slip op. at 5.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marvin Cohen                          :
                                      :
            v.                        :    No. 219 C.D. 2017
                                      :
Zoning Hearing Board of               :
Montgomery Township                   :
and Montgomery Township               :
                                      :
Appeal of:  Montgomery Township       :

# **O R D E R**

AND NOW, this 19th day of January, 2018, the order of the Court of Common Pleas of Montgomery County is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge