In Re: Appeal of AIN          :
Capital Partners, Inc.         :
                              :
From a Decision of:          :
Zoning Board of Adjustment     :
                              :
Appeal of: AIN Capital       :   No. 348 C.D. 2023
Partners, Inc.               :   Submitted: June 3, 2025

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: August 12, 2025

        AIN Capital Partners, Inc. (Appellant) appeals from the Philadelphia County Common Pleas Court's (trial court) March 8, 2023 order (docketed March 9, 2023) affirming the Zoning Board of Adjustment's (ZBA) decision that denied Appellant's request for variances. Appellant presents two issues for this Court's review: (1) whether the ZBA committed an error of law or abused its discretion by granting Councilman Brian O'Neill's (Councilman O'Neill) request for reconsideration; and (2) whether the ZBA committed an error of law or abused its discretion by reversing itself and denying Appellant's request for variances. After review, this Court affirms.

        Appellant owns a 96,970-square-foot vacant lot located in a Residential Single-Family Attached-2 Zoning District (RSA-2 District) (Property). On December 27, 2018, the City of Philadelphia's (City) Department of Licenses and Inspections (L&I) denied Appellant a zoning/use registration permit for the proposed

erection at the Property of 9 detached, twin-style structures (each containing 2 single-family homes, for a total of 18 dwellings) with roof decks accessed by pilothouses and 18 accessory single-car garages accessed by a shared driveway (Plans). L&I noted that the Plans failed to comply with applicable Philadelphia Zoning Code (Zoning Code)[1] requirements in that:

> i. The proposed multi-family use is prohibited in the Property's [RSA-2 District];
>
> ii. A minimum rear yard depth of 20 feet is required, whereas a rear yard depth of 11 [feet] 4.5 [inches] was proposed;
>
> iii. A minimum side yard depth of 8 feet (on each side) is required, whereas a side yard depth of 3 feet (per side) was proposed;
>
> iv. A minimum front yard depth of 15 feet is required, whereas a front yard depth of 8 [feet] 4 [inches] was proposed;
>
> v. RSA-2 [District R]egulations prohibit multiple principal structures on a lot, whereas 9 principal structures were proposed; and
>
> vi. A minimum of 1 accessible parking space and 6 bicycle spaces are required, whereas no accessible parking spaces or bicycle spaces were proposed.

*See* L&I's Dec. 27, 2018 Notice of Refusal (Refusal).

Appellant appealed from L&I's Refusal to the ZBA on January 25, 2019. The ZBA held an initial hearing on the matter on May 22, 2019. On June 18, 2019, Appellant's Counsel (Counsel) wrote to the ZBA requesting that the ZBA delay its vote and hold the record open until July 11, 2019, 20 days past the 30-day period announced at the May 22, 2019 hearing. Counsel stated that due to scheduling issues, he had been unable to meet with the registered community organization's, Somerton Civic Association (SCA), Executive Board to discuss the feasibility of making further adjustments to Appellant's proposed Plans. By July 11,

---

[1] *See* Philadelphia County, Pennsylvania, Zoning Code, *as amended* (2012) (Zoning Code).

2019 letter, Counsel requested a further extension to July 18, 2019. He noted that he had sent SCA revised plans reducing the number of the proposed dwellings from 18 to 14 and was awaiting feedback from SCA's Executive Board. The ZBA also received a July 11, 2019 letter from SCA President Chris Bordelon (Bordelon). Bordelon informed the ZBA that Appellant had supplied SCA with revised plans in early July and SCA's Executive Committee had examined those plans in order to provide the ZBA with feedback prior to the ZBA's vote. Bordelon stated that SCA's Executive Board would have preferred to have this matter presented at a meeting where members could discuss the revised plans and vote. Notwithstanding, Bordelon reported that SCA remained opposed to the project despite the reduction in density.

On July 19, 2019, Counsel notified the ZBA that Appellant had not reached an agreement with SCA, despite having again revised the proposed plans further reducing the number of proposed dwellings to eight. Counsel attached the updated revised plans, restated his arguments in support of the requested variances, and contended that SCA's July 11, 2019 letter made clear that SCA either desired to prohibit development on Appellant's Property altogether by demanding that only one single-family home be built, or SCA wanted to hold Appellant and future homeowners at the Property to a vastly different standard than the rest of the community.

The ZBA held a hearing on July 24, 2019, and voted to grant the requested variances, with a proviso requiring the development to conform with the revised plans submitted to and stamped by the ZBA on July 19, 2019. On July 31, 2019, Councilman O'Neill submitted a request to the ZBA for reconsideration. In support of the request, he contended that Appellant had not met with the community following the May 22, 2019 ZBA hearing and neither he nor SCA's members had seen the most recent revised plans prior to the ZBA voting to approve them on July

3

24, 2019. SCA submitted a letter to the ZBA in support of Councilman O'Neill's reconsideration request on August 6, 2019. Therein, Bordelon contended that SCA members were not shown the latest plan for the Property and had no opportunity to consider the plan before the ZBA approved it.

On August 21, 2019, Counsel submitted a letter to the ZBA arguing that reconsideration was not warranted as there were no special circumstances that were not known and could not reasonably have been known by Councilman O'Neill's office at the time the ZBA voted to grant the variances on July 24, 2019, as required by the ZBA's Rules and Regulations. Counsel strongly disputed Councilman O'Neill's claim that neither his office nor SCA had seen the approved plans prior to the ZBA's vote, stating that Appellant sent them to SCA and copied Councilman O'Neill on July 5, 2019, and SCA notified the ZBA on July 11, 2019, of its continued opposition to the project.

The ZBA granted reconsideration on August 28, 2019. The ZBA subsequently held a hearing on reconsideration on October 23, 2019. At the end of the October 23, 2019 hearing, ZBA Chairman Frank DiCicco announced that the ZBA would hold its vote for 30 days and asked the parties to notify the ZBA if they reached an agreement in the meantime. On December 4, 2019, the ZBA denied the requested variances. On December 16, 2019, Appellant submitted a request to the ZBA for reconsideration of its December 4, 2019 decision. The ZBA denied Appellant's reconsideration request on December 18, 2019.

Appellant appealed to the trial court. On March 8, 2023, the trial court affirmed the ZBA's decision. Appellant appealed to this Court.[2] On April 11, 2023,

---

[2] Where, as here, the trial court does not take additional evidence, this Court's review is limited to determining whether the zoning board committed an error of law or an abuse of discretion. *See Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, . . . 462 A.2d 637, 639

the trial court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). On May 2, 2023, Appellant filed its Rule 1925(b) Statement. On October 27, 2023, the trial court issued its opinion pursuant to Rule 1925(a).

Appellant first argues that the ZBA committed an error of law or abused its discretion by granting Councilman O'Neill's request for reconsideration in the absence of special circumstances that warranted reconsideration. Appellant asserts that, at the ZBA's direction, it presented SCA with its best compromise based upon the least minimum density necessary to maintain project viability and later provided an update to the ZBA (copying both Councilman O'Neill and SCA) regarding the timing of its submission of its proposed revised plan. Appellant maintains that it submitted the revised eight-unit plan to the ZBA two weeks after originally supplying it to SCA and at least one week after Councilman O'Neill received it and SCA notified Councilman O'Neill's office and the ZBA of its continued opposition. Appellant insists, therefore, that nothing was unknown or unknowable at the time the ZBA rendered its July 24, 2019 decision. Further, Appellant contends that Councilman O'Neill's actions and apparent control of the ZBA conveys the impression of impropriety, such that - to the extent the ZBA's Rules and Regulations allow for any ZBA discretion in granting reconsideration - none should be given here.

---

([Pa.] 1983). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence." *Id*. at 640. Substantial evidence is such evidence a reasonable mind might accept as adequate to support a conclusion. *Id*.

*In re: 3401 Sky Props., LLC*, 318 A.3d 152, 157 n.12 (Pa. Cmwlth. 2024) (quoting *Azoulay v. Phila. Zoning Bd. of Adjustment*, 194 A.3d 241, 246 n.4 (Pa. Cmwlth. 2018)).

The City and Councilman O'Neill (collectively, Respondents) rejoin that the ZBA was entitled to grant reconsideration when it learned that Appellant had not ensured full community involvement in its most recent plans. Respondents contend that Councilman O'Neill gave the ZBA the new information that his office had not had a chance to review the latest plans. Further, Respondents assert that the ZBA also noticed that the date on the revised plans was later than the date the SCA Executive Board wrote its letter to the ZBA, so it was unclear who in the community, if anyone, had seen the most recent plans.

The law is well settled that

> [b]ecause whether to grant or deny a request for reconsideration is a matter of administrative discretion, this [C]ourt's scope of review of that decision is limited to determining whether the agency abused its discretion. An abuse of discretion has occurred only where the agency's decision demonstrates evidence of bad faith, fraud, capricious action[,] or abuse of power.

*W. Penn Power Co. v. Pa. Pub. Util. Comm'n*, 659 A.2d 1055, 1065 (Pa. Cmwlth. 1995) (citations omitted).

Section 6.3.1 of the ZBA's Rules and Regulations provides:

> A request for reconsideration of a final determination by the [ZBA] may be permitted by majority vote of the [ZBA] under special circumstances that were not known, and could not reasonably have been known, by the requestor at the time of the hearing. The date on which a decision of the [ZBA] is emailed to the [a]ppellant and all [i]nterested [p]ersons shall be conclusively presumed to be the date of final determination, and the time for a reconsideration request shall run from that date.

ZBA Rules and Regulations § 6.3.1.[3]

---

[3] *See* https://www.phila.gov/media/20250417095028/zba-regulations-20250218.pdf (last visited Aug. 11, 2025); *see also* Reproduced Record at 517a-518a.

Here, in his July 31, 2019 letter requesting reconsideration, Councilman O'Neill stated, in relevant part:

> The [SCA] and I oppose the granting of th[e] variance[s] and ask the [ZBA] for a reconsideration of the vote. At the hearing on May 22, 2019, which was attended by me and members of the community, [Appellant] was instructed to revise [its] plan and meet with members of the community to try to reach a compromise. [Appellant] instead of meeting with [SCA], submitted a plan that was never seen by my office or the members of [SCA].
>
> This new plan should have required a new application and refusal and a scheduled meeting before [SCA].

Reproduced Record (R.R.) at 487a.

SCA's August 6, 2019 letter supporting Councilman O'Neill's reconsideration request similarly provided, in pertinent part:

> The [SCA] and I [(Bordelon)] oppose the granting of th[e] variance[s] and ask the [ZBA] for a reconsideration of the vote. At the hearing on May 22, 2019, which was attended by me and members of the community, [Appellant] was instructed to revise [its] plan and meet with members of the community to try to reach a compromise. [Appellant] instead of meeting with [SCA], submitted a plan that was never seen by my office or the members of [SCA].
>
> This new plan should have required a new application and refusal and a scheduled meeting before [SCA].

R.R. at 489a.

Appellant opposed the reconsideration request in an August 21, 2019 letter, wherein it asserted that it had sent the revised plan to SCA on **July 5, 2019**. However, the ZBA noted in its decision:

> The revised plan stamped by the [ZBA] on July 24, 2019, identified the final revision date as **July 12, 2019**. The accompanying revised plans form, also stamped by the [ZBA], was dated and signed on **July 16, 2019**. While it is unclear what, if any, changes were made after the plans

7

referenced in SCA's July 11, 2019 letter were sent to [SCA] and [] Councilman [O'Neill], the discrepancy suggests the plans seen by SCA were not identical to those approved by the [ZBA] on July 24, 2019.

R.R. at 531a (emphasis added). Significantly, the purpose of the July 24, 2019 hearing was to delay the ZBA's vote and hold open the record so Counsel could meet with SCA's Executive Board to discuss the feasibility of making further adjustments to the proposed plan. Even if Appellant had sent the revised plan to Councilman O'Neill and SCA on July 5, 2019, it is clear that there were no discussions among the parties regarding the feasibility of making further adjustments to it. Under such circumstances, this Court cannot hold that the ZBA's decision "demonstrates evidence of bad faith, fraud, capricious action[,] or abuse of power." *W. Penn Power Co.*, 659 A.2d at 1065. Accordingly, the ZBA did not abuse its discretion by granting Councilman O'Neill's July 31, 2019 reconsideration request.

Appellant next argues that the ZBA committed an error of law or abused its discretion in reversing itself and denying Appellant's request for variances. Specifically, Appellant contends that before the ZBA it explained in detail how the Property's skinny, Vermont-shaped, developable parcel - with its narrow access point and long depth caused by a surrounding Pennsylvania Department of Transportation easement and condemnation - created an unnecessary hardship such that, in order to feasibly develop the Property, it had to build more than the one single-family unit permitted under the Zoning Code, and that the requested variances would not alter the character of the neighborhood. Appellant further asserts that the ZBA's July 24, 2019 approval of the variance for rear yard depth of less than 5 feet from the required 20-foot setback was *de minimis*.

Respondents rejoin that Appellant had to prove that the variances were the minimum modification necessary to build anything on the Property, and the ZBA properly determined that Appellant failed to do so. Specifically, Respondents retort

8

that Appellant did not explain why its proposed plans - first 22 units, then 18 units, then 14 units, and finally 8 units - were the minimum modification possible. Respondents assert that at no point did Appellant explain how it came to the numbers it did and why building two or three homes on the Property was insufficient.

Initially, in ruling on a variance,

> a zoning hearing board abuses its discretion where its findings are not supported by substantial evidence, which is such relevant evidence that a reasonable mind would accept as adequate to support the conclusions reached. [This Court] may not substitute [its] interpretation of the evidence for that of the zoning hearing board, which has expertise in, and knowledge of, local conditions. Even if [this Court] might come to a different conclusion, if the zoning hearing board's determination is supported by substantial evidence, [this Court] will not disturb it.

*RDM Grp. v. Pittston Twp. Zoning Hearing Bd.*, 311 A.3d 1216, 1224 (Pa. Cmwlth. 2024) (citations omitted).

Section 14-303(8)(e) of the Zoning Code provides: "The [ZBA] shall grant a variance only if it determines that the applicant has demonstrated that the criteria of [Section 14-303(8)(e) of the Zoning Code] (Criteria for Approval) have been met . . . . Otherwise, the [ZBA] shall deny the variance." Zoning Code § 14-303(8)(e).[4] Section 14-303(8)(e)(.1) of the Zoning Code instructs, in pertinent part:

> The [ZBA] **shall grant a variance only if it finds each of the following criteria are satisfied**:
>
> (.a) The denial of the variance would result in an unnecessary hardship. The applicant shall demonstrate that the unnecessary hardship was not created by the applicant and that the criteria set forth in [Section] 14-303(8)(e)(.2) [of the Zoning Code] (Use Variances) below, in the case of use variances, or the criteria set forth in [Section] 14-303(8)(e)(.3) [of the Zoning Code]

---

4 *See* https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-266407 (last visited Aug. 11, 2025).

9

(Dimensional Variances) below, in the case of dimensional variances, have been satisfied;

(.b) **The variance**, **whether use or dimensional**, if authorized **will represent the minimum variance that will afford relief and will represent the least modification possible of the use or dimensional regulation in issue**;

(.c) The grant of the variance will be in harmony with the purpose and spirit of this Zoning Code;

(.d) The grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire, or otherwise endanger the public health, safety, or general welfare;

(.e) The variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;

(.f) The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

(.g) The grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located; and

(.h) The grant of the variance will not create any significant environmental damage, pollution, erosion, or siltation, and will not significantly increase the danger of flooding either during or after construction, and the applicant will take measures to minimize environmental damage during any construction.

Zoning Code § 14-303(8)(e)(.1) (emphasis added).

Section 14-303(8)(e)(.2) of the Zoning Code mandates:

To find an unnecessary hardship in the case of a use variance, the [ZBA] must make all of the following findings:

(.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or

10

shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;

(.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of **a variance is therefore necessary to enable the viable economic use of the property**;

(.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(.d) That the hardship cannot be cured by the grant of a dimensional variance.

Zoning Code § 14-303(8)(e)(.2) (emphasis added).

Finally, Section 14-303(8)(e)(.3) of the Zoning Code provides:

To find an unnecessary hardship in the case of a dimensional variance, the [ZBA] may consider the economic detriment to the applicant if the variance is denied, the financial burden created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood.

Zoning Code § 14-303(8)(e)(.3).

Essentially, an applicant seeking a variance pursuant to the Zoning Code must show: (1) the denial of the variance will result in unnecessary hardship unique to the property; (2) the variance will not adversely impact the public interest; and[] (3) **the variance is the minimum variance necessary to afford relief**. The burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling.

11

*Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513, 530 (Pa. Cmwlth. 2018) (emphasis added; citation omitted). The *Liberties Lofts* Court held that "the [ZBA] was 'the sole judge of the credibility and weight of the evidence presented.' *Id*. at 529. Likewise, '[i]t is the function of the [ZBA] to determine whether the evidence satisfies the criteria for granting a variance.' *Id*. at 530 (quoting *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014))." *In re Bass*, 320 A.3d 892, 902 (Pa. Cmwlth. 2024).

Here, relative to the use variances, the ZBA concluded:

10. While evidence of the Property's unique physical conditions and circumstances may have been sufficient to support a finding of unnecessary hardship with respect to the requested use variances, [Appellant] was also required to establish that those variances were the minimum necessary to afford relief and the least modification possible of the regulation in issue. It did not do so. *See, e.g.*, *Metal Green Inc. v. City of Phila.* [&] *City of Phila. Zoning* [*Bd.*], 266 A. 3d 495 (P[a]. 2021) (Under the [] Zoning Code, the minimum variance requirement applies equally to use and dimensional variances.)[.]

11. [Appellant's] evidence on the "least minimum" standard consisted of its attorney's conclusory, unsupported representations that eight single[-]family dwellings was the minimum density necessary to make the project financially feasible. **No expert testimony on the issue or documentation of the expected costs was presented**.

12. At the hearings before the [ZBA], [Appellant] presented only two witnesses: Architect Anthony Mayo [(Mayo)] and [Appellant's] representative Gene Zilberman [(Zilberman)]. **Neither witness explained why [eight] dwellings was the minimum number necessary**, **how that number was arrived at**, **or why fewer dwellings were not possible**. [] Ma[y]o testified only that the then[-]proposed twins were modeled after other area uses. [] **Zilberman** confirmed that he at no point considered developing the [P]roperty as a single[-

12

]family home, but **did not say whether fewer than the proposed number of units was ever considered**.

R.R. at 536a-537a (emphasis added).

The record in this case does not reflect any further testimony on the minimum variance necessary, and Appellant did not direct this Court to any further evidence thereof in its brief.[5] Rather, Appellant insists that this Court cannot rely on the ZBA's conclusions of law because the ZBA cannot reconcile finding *all* of the criteria met in the original hearing, then finding they are not met at the October 23, 2019 reconsideration hearing. This Court disagrees.

The ZBA conducted the October 23, 2019 reconsideration hearing after determining that SCA did not have the opportunity to review Appellant's final proposal, and Appellant and SCA had not discussed the number of units proposed. Had such discussions taken place, the ZBA could have inferred that Appellant and SCA determined that eight units was the minimum variance necessary to afford Appellant relief. As no discussions ensued, no inference was warranted.

Because Appellant did not establish that eight units was the minimum variance necessary to afford it relief, it failed to satisfy one of the required criteria for a variance.[6] Based on the above, this Court holds that the ZBA did not err or abuse its discretion by reversing itself and denying Appellant's request for variances.

---

[5] In its brief, Appellant merely states: "[Appellant] explained that in order to feasibly develop the Property, **more than the one single-family unit permitted under the Zoning Code [was] required**, and that the requested variance[s] would not alter the character of the neighborhood." Appellant Br. at 26 (emphasis added). However, that does not explain why eight units was the minimum number of units necessary to afford relief.

[6] Because Appellant had to satisfy *all* of the variance criteria, *see* Zoning Code § 14-303(8)(e), and it did not meet the minimum variance necessary requirement, this Court need not determine whether the variance for rear yard depth of less than 5 feet from the required 20-foot setback was *de minimis*.

13

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of AIN                              :
Capital Partners, Inc.                            :
                                                  :
From a Decision of:                               :
Zoning Board of Adjustment                        :
                                                  :
Appeal of: AIN Capital                            :    No. 348 C.D. 2023
Partners, Inc.                                    :

## O R D E R

AND NOW, this 12th day of August, 2025, the Philadelphia County Common Pleas Court's March 8, 2023 order (docketed March 9, 2023) is affirmed.

_____
ANNE E. COVEY, Judge